3105 GRAND CORPORATION et al., Respondents, *v.* CITY OF NEW YORK et al., Defendants, and 92–21 UNION HALL STREET, INC., Appellant.

Argued March 13, 1942; decided June 4, 1942.

*Max Kavenoff* and *Lucien Nemser* for appellant. The orders settling and approving the accounts of the receiver, discharging the receiver and authorizing his release, constitute a complete bar to the plaintiff's cause of action where the orders of the court are in full force and effect, contain no reservation as to claims existing at the time of the discharge and no statute imposes liability either against the foreclosing mortgagee or the property affected by the foreclosure. The discharge of the receiver releases not only the receiver but also the property from further liability. (4 Pomeroy Eq. Juris. [4th ed.] § 1668, p. 3885; Clark, Law & Practice of Receivers, 1008, § 696; *Johnson* v. *Central Trust Co.*, 159 Ind. 605; *Madorsky* v. *Suburban Homes Co.*, 45 Ohio App. 83; *Hanlon* v. *Smith*, 175 Fed. Rep. 199; *O'Leary* v. *Brent*, 97 Ark. 372; *Bond* v. *State*, 68 Miss. 648; *Ryan* v. *Hays*, 62 Tex. 42; *Davis*

v. *Duncan*, 19 Fed. Rep. 477; *Farmers Loan & Trust Co.* v. *Iowa Central R. R. Co.*, 7 Fed. Rep. 537.) Subrogation to the lien of taxes will be denied where defendant was not the owner of the property at the time of the tax payment, made to discharge a debt and the defendant has suffered a change of position. (*Newall* v. *Hadley*, 206 Mass. 335; *Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487.) Defendant must prevail where it has been guilty of no wrongdoing, has exercised every diligence in the prosecution of its foreclosure action and has suffered a change of position prior to the commencement of the plaintiffs' action. (*Wille* v. *Maier*, 256 N. Y. 465; *Groesbeck* v. *Morgan*, 206 N. Y. 385; *Feldman* v. *Met. Life Ins. Co.*, 259 App. Div. 123.)

*Henry N. Rapaport, Irving S. Rapaport, Robert S. Garson, Leo Vernon* and *Walter Jeffreys Carlin* for respondents. The undisputed facts establish plaintiffs' cause of action. (*Grace* v. *Corn Exchange Bank*, 287 N. Y. 94; *Whiting* v. *Hudson Trust Co.*, 202 App. Div. 375; 234 N. Y. 394; *Newall* v. *Hadley*, 206 Mass. 335; *Bonham* v. *Coe*, 249 App. Div. 428; 276 N. Y. 540.) The order approving Faber's account as receiver and discharging him is not *res judicata* as against the plaintiffs and does not bar their cause of action. (*Webster* v. *Fall*, 266 U. S. 507.)

FINCH, J. This action is in equity to recover moneys diverted from receivership funds beneficially owned by plaintiffs to pay taxes on property in another realty foreclosure receivership of which payments defendant, 92–21 Union Hall Street, Inc., received the benefit. Two separate and independent foreclosure proceedings were pending, one by plaintiffs and another by defendant-appellant. One Boehle was receiver in plaintiffs' foreclosure, and one Faber was receiver in appellant's foreclosure. Boehle and Faber were business associates, and appellant was actively engaged in compelling Faber through court proceedings to account and pay the taxes on the property of appellant. Boehle took plaintiffs' money out of his receivership account, to the amount of $8,923.26, and gave it to Faber who paid taxes due and owing on the property which was then being foreclosed by appellant and which appellant subsequently bought in on the foreclosure sale. Subsequently Faber and appellant settled and compromised Faber's receivership account, and appellant executed a release to Faber.

Plaintiffs thereupon brought this action in equity to recover the moneys so misappropriated from them. Appellant interposed an answer which raised questions of fact as to the sources of the funds. The court on consent of the parties ordered a reference as to this question of fact. The referee reported that the checks drawn by Boehle to pay the taxes on the property of appellant were drawn upon accounts maintained by Boehle as receiver of the properties in which plaintiffs alone had a beneficial interest.

It appears from the record that since the pendency of this action, the property at 92-21 Union Hall street, on which the taxes in question were paid, and which appellant purchased at the foreclosure sale, has been resold by appellant. " As part of the sale, a fund of $15,000 has been set aside to pay the City's taxes if the lien of such taxes should be restored, or the plaintiffs' claim if the plaintiffs should be successful in impressing a lien on the real estate. * * *."

Upon the above facts it appears that trust funds in which the plaintiffs alone were beneficially interested were stolen from them by Boehle and used to pay taxes due and owing on the property which appellant was foreclosing. The result is not only an unjust enrichment of appellant corporation, but also gives rise to a claim against it based upon subrogation.

Appellant has been unjustly enriched at the expense of plaintiffs to the extent that the taxes paid on the property of appellant were paid out of funds belonging to plaintiffs. (Restatement of the Law of Restitution, p. 12.) The claim of the city for these taxes constituted a lien superior to the lien of the mortgage of appellant. Under such circumstances a benefit resulting in unjust enrichment arises, not only where the moneys of an outside third party add to the property of another, but also where the payment saves the other from expense or loss. In *Whiting* v. *Hudson Trust Company* (234 N. Y. 394, 409) we said: " The defendant's enrichment is a direct and immediate, not an indirect or collateral, consequence of the act of the trustee. It is an enrichment independent of the volition of the defrauded plaintiff or of those for whom he acts. The fruits of the tort are profits in the coffers of the estate. We cannot characterize enrichment so procured as other than unjust. * * * The trust is still augmented by assets unconscionably retained."

* Moreover, facts are here present which permit of the application of the doctrine of subrogation, " which is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay." (Ballantine Law Dictionary, Subrogation.) There is nothing in the nature of a lien for taxes, or in the fact that such lien exists in favor of a sovereign taxing power, so as to prevent the application of this equitable doctrine of subrogation. (*Title Guarantee & Trust Co.* v. *Haven,* 196 N. Y. 487.) In all fairness and justice the property of appellant ought not to be permitted to benefit by the payment of these moneys misappropriated from a fund arising exclusively from the properties in which plaintiffs were beneficially interested. The one who in good conscience ought to pay should be compelled ultimately to discharge the obligation. Subrogation is the principle adopted by equity to meet just such a situation. It is a highly favored remedy and, while not a matter of strict right, the courts are inclined to extend rather than restrict its application. (*Bonham* v. *Coe,* 249 App. Div. 428; affd., 276 N. Y. 540.)

Defendant urges that, while these principles would be applicable against an owner whose taxes had been paid with moneys of a third party, they would not be applicable where the taxes were paid upon lands upon which appellant held only a defaulted first mortgage since the city's claim for taxes on realty does not subject the mortgagee to any personal liability, but merely creates a charge upon the land. The answer may be couched in almost the exact words used by this court in *Title Guarantee & Trust Company* v. *Haven* (*supra,* 496): " The answer to this objection is that the demand for a personal money judgment is only incidental and that the principal prayer of the complaint is for subrogation to the lien of the city, which is to be deemed transferred to the proceeds of the land in view of the fact that the land has been conveyed away by the defendants. If the defendants still retained the land upon which the assessments were paid, the plaintiff succeeding to the rights of the city would have acquired its lien thereon for the amount of the assessments."

In the case at bar there is present also the fact that the funds were wrongfully appropriated from *custodia legis* and traced therefrom into the fund now held by appellant. Taxes which, upon

default of the mortgagor, would have had to be paid by appellant, since they were superior to the lien of its mortgage, were paid with moneys rightfully the property of those entitled to the proceeds of the Boehle receiverships.

The case at bar is analogous to those cases where a trustee of one trust steals from another trust fund, of which he is also trustee, to pay claims against the first trust. In *Whiting* v. *Hudson Trust Company* (234 N. Y. 394) one Eckerson was the executor of two estates, here designated as " A " and " B." Due to the embezzlement of Eckerson, Estate " A " was short when Eckerson was directed by the court to make a distribution to the legatees. In order to make the payments in accordance with the order of the court, Eckerson, taking funds from the " B " Estate, deposited them in his account for the " A " Estate, and made distribution therefrom to the legatees. Thereafter Eckerson died, leaving Estate " B " short of funds to the extent of sums used for the distribution to legatees in the " A " Estate. It was there held that, as Eckerson had stolen and wrongfully used trust moneys to pay the claims of the beneficiaries, the " B " Estate might enforce such claims against the " A " Trust Estate out of the assets that remained to the amount of the claims paid. So, likewise, in the case of *Newall* v. *Hadley* (206 Mass. 335), one man was cotrustee for two estates. He stole money from Estate " A " and then took $11,000 from Estate " B " and deposited the same in Estate " A." Before his cotrustee in Estate " A " knew anything about the transfer, the defaulting trustee took some $3,800 of the converted funds and used them for his own purposes. The balance he used to pay the debts of Estate " A " consisting primarily of taxes on real property owned by that estate and interest on the mortgage on this property. Thereafter he made distribution to the *cestuis* of Estate " A," and several months after such distribution rendered an accounting which was approved by the court. Later the beneficiaries in Estate " B " discovered the conversion and sued in an independent action the distributees of Estate " A " to recover back the funds converted. It was held that Estate " B " could recover all of the moneys used to pay the debts of Estate " A," together with interest from the dates when the debts were paid.

The elements of unjust enrichment and subrogation being present in the case at bar, plaintiffs are entitled to recover the moneys stolen from them and used to pay the taxes which were superior liens against the property upon which defendants were foreclosing the mortgage, unless a valid defense has been interposed.

Appellant urges first that the order settling and approving the accounts of the receiver, discharging him and authorizing his release, constitutes a complete bar to the cause of action of plaintiffs. It is an answer to this contention that these plaintiffs were not parties to the foreclosure proceeding of appellant, nor received any notice either of the payment of the taxes with their funds or of the motion to confirm the receivership accounting, in which proceedings appellant alone was interested. The moneys taken from plaintiffs belonged in no way to the funds of appellant's receivership; nor did any claimant in this latter receivership have any rights against these moneys. As to the money taken from plaintiffs, Faber, as receiver in appellant's foreclosure, acted merely as a conduit. The actions of this appellant which resulted in a settlement and compromise with the receiver in its own action, concluded in the absence of the plaintiffs and without any notice to them, cannot bind these plaintiffs. While appellant might compromise with its own receiver to its own advantage, it could not compromise away the rights of these plaintiffs in their absence. If this were not so, any beneficiary of misappropriated moneys, by the mere expedient of giving a full release to the receiver appointed in the foreclosure action, could obtain a complete defense without opportunity of redress to the rightful owner of such moneys. Hence these plaintiffs are not bound by the accounting between this appellant and its own receiver, of which they had no notice, but have a right to follow their moneys in this independent action. (*Newall* v. *Hadley, supra.*) In the case cited, the facts of which have been more fully set forth above, the same defense of accounting was urged by the defendants in that action. As to this the court said: " * * * The rights of the parties are not changed by the fact that after the money so repaid has been paid out, the thief makes up a lying account in which no one of these facts is disclosed and the principal assents to it under the feeling that it is a true account." And again: " The rights of the parties in a case

like that now before us are fixed when the payment is made, and that they are not affected by a subsequent accounting similar in its legal aspects to the accounting which took place in the case at bar."

Appellant finally urges that it was a purchaser at the foreclosure sale and may interpose such purchase as a complete defense to the right of plaintiffs to follow the moneys stolen from them. If appellant had been an outside third party purchasing at the foreclosure sale, it would have been an innocent purchaser, not charged with the equities at the sale, and a different question would be here presented. (*Marlee, Inc.*, v. *Bittar*, 257 N. Y. 240.) But appellant, as a party to the foreclosure action, is not such an innocent purchaser.

Since appellant is not an innocent purchaser and is in the position of retaining the benefits of the stolen moneys, it must be held to adopt the entire transaction and to be chargeable with the knowledge that such moneys were stolen, so far at least as relates to the right of appellant to retain the benefit. This court quoted with approval in *Whiting* v. *Hudson Trust Company* (*supra*) from *Atlantic Cotton Mills* v. *Indian Orchard Mills* (147 Mass. 268), where it was said: " The rule is general that, if one who assumes to do an act which will be for the benefit of another, commits a fraud in so doing, and the person to whose benefit the fraud will inure seeks, after knowledge of the fraud, to avail himself of that act, and to retain the benefit of it, he must be held to adopt the whole act, fraud and all, and to be chargeable with the knowledge of it, so far at least as relates to his right to retain the benefits so secured."

It follows that the judgment appealed from should be affirmed, with costs.

LOUGHRAN, J. (dissenting). One Boehle was receiver in an action to foreclose a real estate mortgage. He was a business associate of one Faber, who was receiver in another like but independent foreclosure action. By concert between them, Boehle, on March 11, 1936, drew checks upon his receivership accounts for $8,923.26 and therewith paid taxes and penalties then outstanding against the premises that were under foreclosure in the action in which Faber was receiver. At the sale held in that action on April 29, 1936, these premises were bid in for $105,000.

The purchaser at that sale is the defendant in this present action which was commenced in 1939. The plaintiffs are the mortgagees on whose unrelated titles Boehle had acted as receiver. They now pursue the defendant on the theory " that the beneficial owners of foreclosure receivership funds wrongfully diverted to the payment of taxes in connection with another receivership by connivance with the other receiver may, when traced, be followed and recovered from the beneficiary of such payment." This theory was employed by the courts below with the result that the property purchased by the defendant has been impressed with a lien for the restoration to the plaintiffs of the amount of the taxes thereon which Boehle had antecedently paid out of his receivership credits. A single sentence sufficed to dispose of the issue of law. " Clearly," the Special Term said, " there has been an unjust enrichment to the extent of such taxes paid ($8,923.26), and in all fairness and justice the property ought not to be permitted to benefit by such payments." I cannot accept this short conception of the case.

The action in which Faber was receiver is described in the record as the " Bar-Lellan action." In respect of that action, the following findings were made below: " On March 11, 1936, taxes and penalties of $12,624.36 were due on the Bar-Lellan property. They were paid in this manner: $3,701.77 by Faber's check drawn on his receivership account in the Bank of Manhattan Company, $4,500 by Boehle's check drawn on his receivership account in the Jamaica National Bank, and $4,423.26 by his check drawn on his receivership account in the Bank of Manhattan Company. In his accounting in the Bar-Lellan action Faber was credited with the tax payment of $12,624.36, but was still short $16,300, in which amount he was surcharged; $15,000 was paid by his surety and the balance of $1,300 compromised by order of February 2, 1938,* discharging him from liability and directing the defendant 92–21 Union Hall Street, Inc., to deliver to the receiver a general release, which was done. Apparently at this time [*i. e.*, 1938] none of the parties other than the receivers knew the manner in which these taxes were paid." The foreclosure sale through which the defendant took title to the Bar-Lellan property was held, I repeat, on April 29, 1936.

---

* This order was dated February 2, 1938, but was entered March 2, 1938.

I am of opinion that in these circumstances the defendant was entitled to the protection of the great equitable principles as to *bona fide* purchases for· value and without notice. (See *Frost* v. *Beekman*, 1 Johns. Ch. 288, 300; *Simpson* v. *Del Hoyo*, 94 N. Y. 189; *Ten Eyck* v. *Witbeck*, 135 N. Y. 40, 48, 49.) " A court of equity will not deprive a defendant of any right of property, whether legal or equitable, for which he gave value without notice of the plaintiff's equity * * *. If he gave value, and had no notice of the equity, it is eminently just for him to keep what he has got." (Ames, Legal Essays, 254, 255.) As I see it, the decision now made by this court is contrary to these principles and to the cognate policy that there shall be free and fair transmission of record titles to real estate.

One or two other matters should perhaps be noticed. Faber was not the agent of the defendant or of any other person. He was the officer of the court wherein his accounts were settled. The compromise of his failure to make up his shortage of $1,300 was not the result of anything done by this defendant. The court ordered that compromise in the exercise of its own independent judicial discretion. Nor does the defendant suffer any disablement from the circumstance that it was the party plaintiff in the foreclosure on which it became the purchaser for value and in good faith. From the days of the Revised Statutes it has been the rule that every judgment for the sale of mortgaged premises must direct that the plaintiff or any other party may become a purchaser at the foreclosure sale unless the court specially orders otherwise. (Rules Civ. Prac., rule 259; *Ten Eyck* v. *Craig*, 62 N. Y. 406, 421. Cf. *Maroney* v. *Boyle*, 141 N. Y. 462.)

I think the judgments should be reversed and the complaint dismissed.

RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur with FINCH, J.; LOUGHRAN, J., dissents in opinion in which LEHMAN, Ch. J., concurs.

Judgment affirmed.