AMERICAN SURETY COMPANY OF NEW YORK, Respondent, *v.* TOWN OF ISLIP, Appellant.

Second Department, June 5, 1944.

*Guy O. Walser* for appellant.

*Walter Higgins* and *Royal S. Shepard* for respondent.

ALDRICH, J. The plaintiff, surety upon two official bonds of Warren F. Greenhalgh, a former supervisor of the defendant Town, brings this action to recover the sum of $4,180.36 received by the Town in payment of a fine imposed upon one Watkins in a criminal prosecution.

During the years 1936, 1937, 1938 and 1939, Greenhalgh was supervisor of the defendant Town. His official bonds for the highway moneys during that period were furnished by the plaintiff. Greenhalgh was unfaithful to his trust and, acting in concert with one Gertrude Watkins, he participated in the abstraction of the sum of $8,360.72 from the highway moneys by means of false and fraudulent vouchers for material which was never in fact delivered to the Town. The record indicates that Watkins would make out a false and fraudulent bill or voucher, which voucher would then be approved by Greenhalgh and a check drawn by him to pay the amount. Plaintiff and defendant agree that Greenhalgh and Watkins were acting together. Upon discovery of their fraudulent and felonious conduct they were indicted. Watkins was charged on three indictments, but the one with which we are presently concerned is No. 3053, which was a joint indictment against Greenhalgh and Watkins and charged the crime of "Obtaining Proceeds of Fraudulent Audit or Payment, contrary to Penal Law, Section 1864."

Greenhalgh stood trial and was convicted. His conviction was affirmed by this court (261 App. Div. 824) and by the Court of Appeals (286 N. Y. 595). Watkins pleaded guilty to the three indictments against her. On indictment No. 3053, out of which the fine arose, she was sentenced "to serve not less than three years nor more than five years in Bedford Hills Prison — sentence suspended and fined four thousand one hundred eighty

dollars and thirty-six cents ($4180.36) said fine to be returned to the Town of Islip automatically.'' Watkins paid her fine, which was held by the County Treasurer at first, but subsequently, upon order of the County Court of Suffolk County, the fine was paid to the defendant Town '' as required by Sec. 1864 of the Penal Law.'' Shortly before the County Treasurer paid the amount of the Watkins fine to the defendant Town, the plaintiff paid to defendant $8,360.72, with interest, to cover in full the loss which the defendant had sustained by reason of the fraudulent acts of Greenhalgh.

Upon these facts, the plaintiff claims the right to the amount of the Watkins fine as partial reimbursement for the amount of the loss paid by it on the bonds. The claim is that the fine was of a restitutionary nature, and that, upon payment thereof to the Town, the plaintiff was subrogated to the rights of the Town and, by operation of law, became immediately entitled to payment over to it. In this contention the plaintiff is in error.

In general, a surety or liability insurer is subrogated to the rights of the creditor against third parties whose wrongs have compelled the surety or insurance company to make payment. (4 Williston on Contracts, § 1267; *U. S. F. & G. Co.* v. *Carnegie Trust Co.,* 161 App. Div. 429, at p. 433, affd. on opinion below 213 N. Y. 629.) The surety here, by its payment of the loss, became subrogated to the civil rights and remedies of the Town against Watkins. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.,* 226 N. Y. 225; *National Surety Co.* v. *National City Bank,* 184 App. Div. 771.) However, this doctrine of subrogation does not give a surety any rights which the creditor never possessed. The right of subrogation is derivative, comes solely from the assured, and can only be enforced in his right. If the assured has no right which he can transfer to the insurer, then the insurer can have no subrogation and cannot take the place of the assured for the purpose of enforcing the liability for the loss. (*Platt* v. *Richmond, Y. R. & C. R. R. Co.,* 108 N. Y. 358, at p. 364; *Phœnix Ins. Co.* v. *Erie Transportation Co.,* 117 U. S. 312.) One text writer states the rule as follows (1 Brandt on Suretyship [3d ed.], § 328): '' There are scores of cases where the applicant for subrogation has been turned away because the proofs failed to show that the creditor or obligee had anything in the nature of rights or remedies to which the party paying could be subrogated. Subrogation was denied because there was nothing to be subrogated to. One paying the debt of another is subrogated only to those rights and remedies of which the creditor might have availed himself for the col-

lection of that debt and is not subrogated to rights of the creditor that are wholly disconnected therewith.''

Here, the right of the Town to this fine is entirely independent of any civil right or remedy to which the Town was entitled. The section of the Penal Law (§ 1864) under which the indictment was found and for the violation of which the fine was imposed and paid, reads as follows:

'' A person who, being or acting as a public officer or otherwise, by wilfully auditing, or paying, or consenting to, or conniving at the auditing or payment of a false or fraudulent claim or demand, or by any other means, wrongfully obtains, receives, converts, disposes of or pays out or aids, or abets another in obtaining, receiving, converting, disposing of, or paying out any money or property, held, owned, or in the possession of the state, or of any city, county or village, or other public corporation, or any board, department, agency, trustee, agent or officer thereof, is guilty of a felony, punishable by imprisonment for not less than three nor more than five years, or by a fine not exceeding five times the amount or value of the money or the property converted, paid out, lost or disposed of by means of the act done or abetted by such person, or by both such imprisonment and fine. The amount of any such fine when paid or collected, shall be paid to the treasury of the corporation or body injured. A conviction under this section forfeits any office held by the offender, and renders him incapable thereafter of holding any office or place of trust.

'' A transfer in whole or part of any deposit with any bank or other depositary, or of any credit, claim or demand upon such depositary, whereby the right, title or possession of the owner or holder of such deposit, or of any custodian thereof, is impaired or affected, is a conversion thereof under this section.''

That section, it will be noted, expressly provides that any fine imposed thereunder '' when paid or collected, shall be paid to the treasury of the corporation or body injured.'' The indictment under which the fine was imposed expressly charged a violation of section 1864. By the statute the fine, when paid, was to be paid to the Town. The County Court had no discretion about where that fine should go.

Section 2 of the Penal Law speaks of a fine as '' punishment.'' Likewise, the same section includes as punishment imprisonment, removal from office, disqualification to hold any office of trust, honor or profit under the State, or other penal discipline. Section 1864 says that the crime is '' punishable '' by imprison-

ment, " fine " or by both. There is also the additional punishment of forfeiture of office and disqualification to hold any office or place of trust. In other words, this penal section includes four of the forms of punishment referred to in section 2. Obviously, the imprisonment, removal from office and disqualification to hold office, et cetera, are punishment. The " fine " is to be considered in the same light. Another section of the Penal Law (§ 20) headed " Objects of Penal Law " says that the chapter specifies the classes of persons who are deemed capable of crimes, and liable to punishment therefor; defines the nature of the various crimes; and prescribes the kind and measure of " punishment " to be inflicted for each. The term " fine " has a distinct meaning. It is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor. (25 C. J., Fines, Forfeitures and Penalties, § 1, p. 1148; 36 C. J. S., Fines, § 1, p. 780.) A fine is distinguishable from a sentence of imprisonment in that it is pecuniary rather than personal punishment. (36 C. J. S., Fines, § 1, p. 781; 25 C. J., Fines, Forfeitures and Penalties, § 1, p. 1149; *Hart* v. *Norman,* 92 Misc. 185.) As generally understood in this State, a fine is a sum of money exacted of a person guilty of a crime, the amount of which may be fixed by law or left in the discretion of the court. (*City of Buffalo* v. *Neubeck,* 209 App. Div. 386, at p. 388; *Village of Lancaster* v. *Richardson,* 4 Lans. 136.) The Penal Law also provides for the " punishment " of a felony, and also of a misdemeanor, where no other " punishment " is specially prescribed. The sections say that the person convicted is " punishable " by imprisonment or " by a fine " (Penal Law, §§ 1935, 1937).

The imposition and disposition of fines, subject to constitutional restriction, rest within the discretion of the Legislature. (*People ex rel. Huntington et al.* v. *Crennan,* 141 N. Y. 239; 36 C. J. S., Fines, § 19; 25 C. J., Fines, Forfeitures and Penalties, § 40; *State* v. *Pray,* 30 Nev. 206; *Postelwait* v. *State,* 28 Okla. Cr. 17; *Com.* v. *Irvine, appellant,* 125 Pa. Super. Ct. 606; *Rogers Manufacturing Co.* v. *Rogers,* 38 Conn. 121.) As was stated in *State* v. *Pray* (*supra,* p. 219) : " When a fine is paid in pursuance of a judgment, the statute determines what disposition shall be made of it, and neither the trial court nor this court has power to alter such disposition, * * *."

These authorities show that the fine in this case was punishment for the criminal offense. The Town, by an act of the Legislature, has become entitled to the fine money as the designee

of the State. As was said in the *Crennan* case (*supra*) whatever right the Town has to it is not such as an individual has to his private property. The Town has received it for a public use under the laws of the State. We cannot turn it into a private use by payment over to the surety.

The history of this statute clearly shows that the fine is imposed as punishment and not as restitution. The original statute, of which section 1864 is the successor, was first passed by the Legislature in 1875. (L. 1875, ch. 19.) That act was entitled " An Act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property." By that statute it was provided (§ 1) that the defendant " shall, on conviction of such offense, be punished by imprisonment in a state prison for a term not less than three years or more than ten years, or by a fine not exceeding five times the loss resulting from the fraudulent act or acts which he shall have so committed, aided or abetted, to be ascertained, as hereinafter mentioned, or by both such imprisonment and fine." Then it was provided (§ 3) that when rendering a verdict of guilty upon the trial of any person indicted under this act, the jury might find and state with their verdict the amount of loss resulting from the offense of the defendant.

Between 1875 and 1881 there does not appear to have been any amendment of this statute. In 1881 the Legislature adopted the Penal Code. (L. 1881, ch. 676.) The Act of 1875 was consolidated in sections 166 and 167 of the Penal Code. By that act a conviction was punishable by imprisonment for not less than three nor more than five years, or by a fine not exceeding five times the amount or value of the money or the property converted, paid out, lost or disposed of by means of the act done or abetted by such person, or by both such imprisonment and fine. It was provided (§ 166) that " The amount of any such fine when paid or collected, shall be paid to the treasury of the corporation or body injured," and " A conviction under this section forfeits any office held by the offender, and renders him incapable thereafter of holding any office or place of trust." In 1883 the Court of Appeals had before it a case involving a prosecution under chapter 19 of the Laws of 1875. (*Bork* v. *The People of the State of New York*, 91 N. Y. 5.) In the interpretation of the act, the court gave some history of it. It said (pp. 15–16) : " It is a part of the public history of the time that when the act was passed public attention had been recently called to gross frauds committed by municipal officers, especially in

the city of New York, in the abstraction, diversion and embezzlement of public funds and property. The malfeasance of officials intrusted with public means and property was the danger especially apprehended. Without their direct act or connivance it would be difficult to accomplish the frauds against which the statute was aimed. It was one of the purposes of the act, as the word peculation in the title indicates, and perhaps its primary purpose, to afford additional security against the betrayal of official trusts, by imposing severer punishment for embezzlements or other frauds when committed by public officers in misapplying public property, than was provided by existing laws.''

We have, then, from the title of the original act, that it was to provide '' more effectually for the punishment of peculation and other wrongs '' and the statement of the Court of Appeals that it was one of the purposes of the act, and perhaps its primary purpose, to afford additional security against the betrayal of official trusts, by imposing severer punishment. The authorized fine of five times the amount of any injury indicates that the fine is in the nature of punishment.

No civil right or remedy of either the Town or the surety was in any way impaired or affected by the criminal prosecution of Watkins or by the payment of the fine as a result of her conviction. (Civ. Prac. Act, § 9; Penal Law, §§ 23, 24, § 512-b, formerly § 643; Code Crim. Pro. § 5-a; *Gordon* v. *Hostetter*, 37 N. Y. 99; *Mairs* v. *Baltimore & Ohio R. R. Co.*, 175 N. Y. 409; *People ex rel. Simpson Co.* v. *Kempner*, 208 N. Y. 16.)

Here, there was a civil liability of both Greenhalgh and Watkins to the Town. As joint tort-feasors who had fraudulently obtained the money of the Town they could be sued either jointly or severally. This civil remedy was not merged in the criminal prosecution. It was not affected by the conviction of the two guilty parties. The payment of the fine in the criminal prosecution was in punishment of the crime against the public. It in no way affected the civil obligation to compensate for the tort. If the Legislature had intended to vary the general rules of law, it easily could have said so in appropriate language. We have no right to read into the statute what the Legislature has, obviously, intentionally left out.

These authorities demonstrate clearly that there was no legal relation between the rights and remedies of the Town, to which the surety was subrogated by virtue of its payment, and the fine imposed upon Watkins as the result of the criminal prosecution. The plaintiff could not be subrogated to something which the Town never had. The Town had no legal right to the institution

of the criminal prosecution. That was a matter for the People of the State of New York to initiate through their duly authorized representatives. When Watkins was convicted, the Town had no legal right to the imposition of a fine. That was a matter of discretion for the court of criminal jurisdiction to determine. Likewise, the amount of that fine was in the discretion of that court. When the fine was imposed and paid, however, by virtue of the statute, the amount of the fine was required to be paid to the treasury of the Town. In the disposition of the fine, the trial court had no discretion. The Town holds the money as the designee of the State through an act of the Legislature. That legislative provision does not authorize any payment of the money to the surety in this case.

This view which we take of the merits of the litigation makes it unnecessary to consider the incidental questions argued by the parties.

The order granting the motion of the plaintiff for summary judgment, and the judgment entered thereon, should be reversed on the law and the facts, with ten dollars costs and disbursements, and the motion to strike out the answer and for summary judgment should be denied, with ten dollars costs.

HAGARTY, Acting P. J., CARSWELL, ADEL and LEWIS, JJ., concur.

Order granting plaintiff's motion for summary judgment, and the judgment entered thereon, reversed on the law and the facts, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.