OPINION OF THE COURT
Gerald Adler, J.
This is an action for a declaratory judgment brought by the petitioner pro se to determine his rights and those of his insurance carrier, Government Employees Insurance Company, hereinafter referred to as "GEICO,” to a fund in the sum of $16,798.44, now being held in escrow following the settlement of an action in which the plaintiff claimed damages resulting from an automobile accident.
Named as respondents are petitioner’s attorney, who is the escrowee of the fund and who will hereinafter be referred to as "Queller,” the attorneys for the defendants in the original lawsuit and who will hereinafter be referred to as "Cooper-stein,” and GEICO.
The underlying lawsuit was settled without the aid of the court for the sum of $177,500 and an additional sum of $4,500 payable to petitioner’s spouse for loss of services.
The fund referred to is equivalent to the amount paid to petitioner by GEICO as "additional first party benefits” pursuant to the insurance contract and described as an "additional personal injury protection” endorsement which is also commonly referred to as extended economic heneñts and for which petitioner paid an additional premium.
*339 Negotiations for the settlement were conducted by Queller and Cooperstein with full disclosure to the petitioner, who has been described by Queller during trial as an outstanding authority on the issue before the court despite his apparent lack of legal training.
Petitioner’s contention is that the manner of settlement, the preparation of the general release and accompanying correspondence had the effect of terminating any and all rights of GEICO to the fund, and Queller joins in the aforesaid argument.
The proof is clear that all of the parties were on notice that GEICO had made a claim for reimbursement for its payments under the extended economic benefits provisions of its insurance contract, which it has inartfully described as a "lien” rather than a "right of subrogation.”
Following completion of settlement negotiations, a general release, on a "Blumberg form B 110,” was executed by petitioner and acknowledged by Queller. The release contained all of the usual provisions and, in addition thereto, the following language: "This release is not, nor is it intended to be, a release of the claim or cause of action with respect to the damages to the automobile owned by Alexander f. kozlowski and which was involved and damaged in the accident of August 30, 1974.”
The letter by Queller accompanying the release, which was sent to Cooperstein under date of January 23, 1978, reads in part as follows: "Enclosed herewith please find a release duly executed by our client, Alexander F. Kozlowski, in the amount of $177,500.00, which represents settlement of his action for pain, suffering and personal injuries, only, sustained by him on August 30, 1974.” (Emphasis added.)
Cooperstein by letter dated January 26, 1978 forwarded checks totaling the amount of settlement and set forth certain explanations and provisions in respect to the fund as follows:
"4. Check of Howden Swann Ltd., check No. 31826 payable to Alexander Kozlowski and Government Employees Insurance Company in full satisfaction of Geico lien file S62973789(745) in the sum of $16,798.44.
"The check in the sum of $16,798.44 represents a lien asserted by Government Employees Insurance Company for extended economic benefits furnished to the plaintiff.
"Pursuant to a letter forwarded to this oifice by you, it is *340 expressly understood that these checks are being forwarded to you with the distinct understanding that the check in the sum of $16,798.44 payable to Alexander Kozlowski and Government Employees Insurance Company will be held by you in escrow until such time as this check has been properly endorsed by both Alexander Kozlowski and Government Employees Insurance Company or shall be held by you in escrow until such time as there has been a judicial final Order expressly relating to the manner of distribution of such funds.
"The within checks are being forwarded to you upon your representation that you will retain physical control of the check in the sum of $16,798.44.
"We are also enclosing herewith an original and copy of executed stipulations of discontinuance.
"With the furnishing of these checks, our principals have fully complied with all of the terms of the settlement.
"Very truly yours,
WALTER M. COOPERSTEIN.”
Queller responded by letter dated January 27, 1978 and the pertinent portions thereof read as follows:
"With respect to the check in the amount of $16,798.44, such check represents an asserted lien by Government Employees Inusrance Company for extended economic benefits advanced to the plaintiff Alexander Kozlowski.
"This is to confirm that with respect to the aforesaid check in the sum of $16,798.44, that I will hold the same in escrow until such time as this check has been properly endorsed by Alexander Kozlowski and Government Employees Insurance Company, or until there has been a judicial final order with regard to the distribution of such funds.
"Thank you for your courtesy and cooperation in this matter.
"Very truly yours,
QUELLER, FISHER & BLOCK
/s/ Fred Queller
By: FRED QUELLER.”
Petitioner and Queller argue that the language in the general release, when read together with the accompanying letter dated January 23, 1978, constitutes satisfaction for pain and suffering only and does not include "economic loss” and hence GEICO has no right of subrogation to the fund.
There are three elements of damages which comprise the term "personal injury”: loss of earnings, medical expenses *341 (these two being esentially "economic loss” in the language of the no-fault statute), and mental and physical pain and suffering ("non-economic loss” in the language of the no-fault statute). "There are three basic kinds of losses plaintiffs prove in personal injury actions. Each, subject to its own variations, is a recoverable element of damages if the loss is in fact sufficiently proved. First, there are time losses, for which the plaintiff can recover the value of any lost time or earning capacity, as for example, where he is incapacitated while in the hospital or where his injuries prevent him from future work. Second, there are expenses incurred by reason of the injury, usually medical expenses and kindred items. Third, there is whatever loss is involved in pain and suffering in its various forms”. (Dobbs, Remedies, § 8.1, p 540.) This has consistently been the law in New York (see 2 Clark, NY Law of Damages, §§ 573, 586, 592, 603, and cases cited therein).
The petitioner calls the court’s attention to "pain, suffering” but will have the court ignore the "and personal injuries” language in the letter.
Petitioner cites Scinta v Kazmierczak (59 AD2d 313) as a case on "all fours” and, therefore, as controlling. Petitioner’s reliance on Scinta is misplaced since in Scinta there is no letter stating that the settlement as embodied in the general release was for "personal injuries.”
Assuming, arguendo, the court adopts the petitioner’s position that the January 23 covering letter is to be interpreted as indicating that the settlement was only for pain and suffering, the outcome remains unchanged. Equitable principles militate against petitioner recovering the $16,798.44 held in escrow.
Subrogation has been defined as "the right of one person, upon discharging another person’s obligation, to be substituted for the other person’s obligee so as to stand in the same position as the obligee had stood against the other person before the obligation was discharged.” (57 NY Jur, Subrogation, § 1, p 35.) "An insurer has the right to recover, by way of subrogation, for damages that it has been called to pay an insured under its policy. The subrogation of an indemnity insurer arises by operation of law when it makes payment to the insured”. (16 Couch, Insurance [2d ed], § 61:4, pp 239-240, emphasis added.) "Subrogation is a normal incident of indemnity insurance” (supra, § 61:8, p 241).
The principle of subrogation is equitable in nature. "The doctrine of subrogation in insurance does not arise from, nor *342 is it dependent upon, statute or custom or any of the terms of the contract; it has its origin in general principles of equity and in the nature of the insurance contract as one of indemnity.” (supra, § 61:20, p 250.) "The right of subrogation is based upon principles of equity and natural justice.” (Ocean Acc. and Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, 47.)
This court sits not only as a court of law but also as a court of equity. "The supreme court shall have general original jurisdiction in law and equity”. (NY Const, art VI, § 7, subd a.) The jurisdiction of the Supreme Court of the State of New York "extends to all cases of law and equity, by virtue of the provision of the Constitution defining its power.” (Youngs v Carter, 10 Hun 194, 197.)
Since this court sits as a court of equity and since subrogation is equitable in nature, not dependent on contract, this court will apply principles of equity in determining the rights of the parties. "The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort, and the resultant equity is steadily kept in view.” (Acer v Hotchkiss, 97 NY 396, 402.) "There is * * * authority that subrogation remains basically equitable in character, and hence, subrogation is to be accorded upon equitable principles even though the right thereto, as authorized by statute in respect to policies of insurance, is contractually declared.” (16 Couch, Insurance [2d ed], § 61:20, p 252, emphasis added; see Roberts v Fireman’s Ins. Co., 376 Pa 99, 107, citing Acer v Hotchkiss, supra.)
The doctrine of subrogation was formulated by equity to prevent unjust enrichment (King v Pelkofski, 20 NY2d 326, 334; 3105 Grand Corp. v City of New York, 288 NY 178, 182). "Subrogation is the principle which exists to prevent double recovery by the insured and to force the wrongdoer to bear the ultimate costs.” (Scinta v Kazmierczak, 59 AD2d 313, 316.) "Subrogation has the dual objective of (1) preventing the insured from recovering twice for the one harm, as would be the case if he could recover from both the insurer and from a third person * * * and (2) reimbursing the surety for the payment which it has made.” (16 Couch, Insurance [2d ed], § 61:18, p 248.)
Subrogation is clearly warranted in the case at bar. To deny its application would be to let petitioner be unjustly enriched and to allow him to have a double recovery; pe *343 titioner was advanced $16,798.44 by respondent insurer GEICO and then received a settlement of $177,500. By ingeniously (and perhaps disingenuously) characterizing his settlement as compensation for "pain and suffering” only, petitioner, by clever taxonomy, is attempting to eliminate GEI-CO’s right of subrogation.
The court, finding that the intent of the parties was that the settlement should encompass all items of recoverable damages, including economic loss, cannot allow petitioner to recover the $16,798.44 as fruits of his attempted utilization of descriptive phrases. To do so would be to hallow semantics over parties’ intent and justice. "Equity looks at the real intent of the parties and not at the mere external form.” (Evans Prod. Co. v Decker, 52 AD2d 991, 992.)
There is a further reason why, even if this court of equity would give the January 23 covering letter the implausible construction that the petitioner urges, respondent insurer GEICO would still have the right of subrogation, and the court would still abide by its holding. Implicit in petitioner’s position is that he did not eliminate respondent GEICO’s right of subrogation; he merely prevented the right from coming into being. On the facts and circumstances of this case, this contention is a classic example of a distinction without a difference. An attempted destruction or derogation of an insurer’s right of subrogation will not have its intended effect where the tort-feasing third party (usually, the defendant) had, or through reasonable inquiry should have had, notice of the insurer’s subrogation rights (Connecticut Fire Ins. Co. v Erie Ry. Co., 73 NY 399; Ocean Acc. and Guar. Corp. v Hooker Electrochemical Co., 240 NY 37, supra; Hamilton Fire Ins. Co. v Greger, 246 NY 162). "[I]t is generally held that where the tortfeasor obtains a release from the insured with knowledge that the latter has already been indemnified by the insurer, such release of the tortfeasor does not bar the subrogation of the insurer.” (16 Couch, Insurance [2d ed], § 61:197, p 348; emphasis added.) While technically, here, petitioner tried to prevent the insurer’s subrogation right from coming into existence, this is akin to, and should be governed by the same principles as, attempting to eliminate the insurer’s right to subrogation. Aborting a right from coming into existence is, here, the functional equivalent of destroying an existing right. "Equity regards substance rather than form” (Pezenik v Greenberg, 251 App Div 866, 867).
*344 The respondents-defendants were on notice as to respondent insurer GEICO’s claim of subrogation and, therefore, GEICO may still enforce its subrogation right. In order to protect GEICO’s right of subrogation, the defendants, with the consent of the plaintiffs, prudently provided that as part of the settlement, the sum of $16,798.44 would be set apart in a separate check made payable jointly to plaintiff-petitioner pro se Kozlowski and to respondent GEICO. This fund is held in escrow by respondent Fred Queller, Esq. Since, as a result of defendants’ foresight (and with plaintiff’s acquiescence), the afore-mentioned sum was specifically set aside as a fund against which GEICO, in the event it is found to have a right of subrogation (and this court so finds), can enforce that right, GEICO is entitled to the $16,798.44 held in escrow. Having set apart the said amount, the defendants succeeded both in preserving GEICO’s right of subrogation and in protecting themselves against any further liability. By creating the fund, defendants have discharged fully all their obligations and are completely out of the picture excepting as to the collision claim.
This court would be remiss if it did not comment on the August 10, 1977 letter from GEICO to plaintiffs’ then attorneys (Queller, Fisher and Block). In that letter GEICO claimed "to have a lien on the proceeds of any recovery, whether by judgment, settlement or otherwise, to the extent of additional first party benefits paid or payable to the applicant, Alexander kozlowski.” (Emphasis added.) GEICO does not have a lien on any proceeds merely because it possesses a right of subrogation. The use of the term "lien” is incorrect.
Absent contractual provision, statute, or some other positive rule of law, a right of subrogation does not create a lien. "A lien may be created only by contract, either expressly or by implication, or by some positive rule of law, such as by statute, and no one has a lien upon the property of another with whom he deals unless it is conferred in such a manner.” (35 NY Jur, Liens, § 4, p 193.)
"The right of subrogation merely is the substitution of one person in the place of another with respect to a right or claim. The successor, who is so substituted, as here by making * * * payments to the plaintiffs under a policy of insurance wherein the right of subrogation is retained, succeeds only to the rights and remedies of the persons paid.
*345 "It is in no way a lien which is a charge or incumbrance upon property.
"The right of the carrier which made the * * * payments pursuant to a contract of insurance is to pursue its contractual subrogation right against the tort-feasor or, if it can prove payment of the * * * expenses by the tort-feasor to the plaintiffs, proceed against the plaintiffs on contract.” (Faust v Luke, 80 Misc 2d 953, 956.)
It is the determination of this court that the escrow fund, in its present or substituted form, shall be paid to GEICO.
The petition is in all other respects denied.