**ALLSTATE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Kieron MAZZOLA and First Fidelity L.S. Group, Inc., Defendants– Appellees.**

**No. 743, Docket 97–7974.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1998.

Decided April 27, 1999.

Michael Majewski, Garden City, N.Y. (James P. McCarthy, Nicole Norris Poole, Majewski & Poole, LLP, on the brief), for Plaintiff–Appellant.

Kevin E. Wolff, New York, N.Y. (Timothy P. Smith, McElroy, Deutsch & Mulvaney, on the brief), for Defendants–Appellees.

Before: NEWMAN and JACOBS, Circuit Judges, and BURNS, District Judge.[1]

BURNS, District Judge:[2]

Plaintiff Allstate Insurance Company ("Allstate") appeals from a judgment entered on July 22, 1997 in the United States District Court for the Southern District of New York (Scheindlin, J.), granting defendants Kieron Mazzola's and First Fidelity L.S. Group's ("First Fidelity") motion for summary judgment. Allstate commenced this insurance action in district court, invoking diversity jurisdiction, to recover payments of medical benefits the company made on behalf of its insured following an auto accident. On appeal, Allstate asserts that the district court erred in granting the defendants' motion for summary judgment. The plaintiff specifically objects to the district court's reading of New York law and the lower court's holding that a written release of claims obtained by the defendants from Allstate's insured barred any recovery under the common law doctrine of equitable subrogation. Allstate contends that a genuine issue of material fact exists concerning whether the defendants executed the release with actual or constructive knowledge that its right of subrogation had attached. We agree and

---

1. Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

2. Judge Burns, who was unable to be present at oral argument, listened to the tape recording of it.

thus vacate the judgment of the district court and remand the case for further proceedings in accordance with this opinion.

### BACKGROUND

This action arose out of an automobile accident that occurred on an exit ramp of the New York State Thruway (I–87) at Ramapo, New York on July 21, 1993. Kevin Hall was a passenger in a New Jersey-registered Jeep Wrangler operated by Kieron Mazzola and owned by First Fidelity. Royal Insurance Company of America ("Royal") insured the Jeep and the driver through a policy issued to Kim Lewis Mazzola and Carole Mazzola, Kieron's parents. The insurance policy, which was purchased in New Jersey, provided coverage of $250,000 per person and $500,000 in the aggregate, as well as no-fault personal injury protection benefits. On the day in question, Mazzola apparently lost control of the Jeep and collided with a Dodge Sedan driven by Marie Solimine. Kevin Hall suffered serious burns in the accident and his medical expenses totaled $133,637.22. Allstate paid the entire amount of medical expenses, as provided by the no-fault insurance provisions of the Personal Auto Policy issued to his father.

Shortly thereafter, Kevin Hall and his parents filed a personal injury action against Mazzola, First Fidelity, Royal, and Solimine in the Superior Court of New Jersey, Law Division, Essex County on August 18, 1994. One month later, the Halls and Mazzola, First Fidelity, and Royal settled the case for one million dollars. As a result of the settlement, the action was dismissed with prejudice with respect to these defendants. The following month, the Halls signed a release that extended to and included all of the Halls' claims arising out of the accident.

Allstate instituted two proceedings designed to recover the amount of medical benefits paid on behalf of Kevin Hall. The company first filed for arbitration against Royal to recover $133,637.22 on July 19, 1996, pursuant to New York Insurance Law § 5105(b). The arbitrator, Mary Carol Bate of Arbitration Forums, Inc., awarded Allstate $58,637.22. In April 1997, Allstate filed a petition to vacate or modify the arbitration award in the Supreme Court of New York, Kings County. On January 20, 1998, the court vacated the award and remitted the case to arbitration for a recomputation of the award to a maximum of $50,000.

Allstate filed the present suit against Kieron Mazzola and First Fidelity in the United States District Court for the Southern District of New York on July 19, 1996, and now seeks to recover the remaining $83,637.22. On July 18, 1997, the district court granted the defendants' motion for summary judgment. *See Allstate Ins. Co. v. Mazzola*, 986 F.Supp. 756, 761 (S.D.N.Y.1997). The court rested its decision upon two separate analyses. First, the court held that the Halls' signed release and waiver in the New Jersey state court action operated to bar Allstate's right to recover from the defendants under the doctrine of equitable subrogation. Employing the general principle that a subrogee holds no more rights than those possessed by the subrogor, the court concluded that Allstate's right of subrogation terminated when the Halls, the subrogors, executed the release of claims with Mazzola and First Fidelity. *See id.* at 758. Second, the district court found that Allstate could not recover under the statutory no-fault insurance provisions under either New York law or New Jersey law. Although the parties disputed whether New York law or New Jersey law applied, the court avoided the issue by deciding that neither state's insurance laws provided an avenue of recovery. *See id.* at 760–61. Allstate argues its appeal entirely on New York law, and therefore abandons any argument under the law of New Jersey. Our analysis is grounded in New York law; but we recognize that the choice of law issue will await remand.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and review the grant of summary judgment *de novo. See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149 (2d Cir. 1998); *Davidson v. Scully*, 114 F.3d 12, 14 (2d Cir.1997). Summary judgment must be granted when the evidence shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 362 (2d Cir.1997). This Court will reverse a grant of summary judgment if there is sufficient evidence in the record from which a jury could reasonably decide the case in favor of the non-moving party. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988). The issues presented on this appeal concern: (1) whether Allstate's inability to maintain an action under New York Insurance Law §§ 5104(b) and 5105(a) bars any relief under the common law doctrine of equitable subrogation; and (2) whether the Halls' written release of claims against Mazzola and First Fidelity operated to destroy Allstate's right to recover as an equitable subrogee. We take up each issue in turn.

### I. *Doctrine of Equitable Subrogation*

■ "Subrogation is the right one party has against a third party following payment, in whole or in part, of a legal obligation that ought to have been met by the third party." 2 Allan D. Windt, *Insurance Claims and Disputes* § 10.05 (1995). The doctrine of equitable subrogation allows insurers to "stand in the shoes" of their

insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss. *See Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 626 N.Y.S.2d 994, 650 N.E.2d 841, 843 (1995); 16 George J. Couch et al., *Couch on Insurance 2d* § 61:1 (2d rev. ed. 1983 & Supp. 1998) ("Couch"). In short, one party known as the subrogee is substituted for and succeeds to the rights of another party, known as the subrogor. The doctrine of subrogation, which is based upon principles of equity, *see Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 105 (2d Cir. 1992); *Kozlowski v. Briggs Leasing Corp.*, 96 Misc.2d 337, 408 N.Y.S.2d 1001, 1004 (N.Y.Sup.Ct.1978); 16 Couch, *supra*, § 61:18, has a dual objective as stated by New York courts:

> It seeks, first, to prevent the insured from recovering twice for one harm, as it might if it could recover from both the insurer and from a third person who caused the harm, and second, to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made.

*Winkelmann*, 626 N.Y.S.2d 994, 650 N.E.2d at 843 (citations omitted); *see also 3105 Grand Corp. v. City of New York*, 288 N.Y. 178, 42 N.E.2d 475, 477 (1942); *Kozlowski*, 408 N.Y.S.2d at 1004.

### II. *Statutory Bar to an Equitable Subrogation Claim*

■ The first issue concerns whether Allstate's inability to recover under New York Insurance Law §§ 5104(b) and 5105(a) [3] bars a remedy under the doctrine

---

**3.** Section 5104(b) provides in relevant part:

In any action by or on behalf of a covered person, against a non-covered person, where damages for personal injuries arising out of the use or operation of a motor vehicle or a motorcycle may be recovered, an insurer which paid or is liable for *first party benefits* on account of such injuries has a lien against any recovery to the extent of benefits paid or payable by it to the covered person.

N.Y. Ins. Law § 5104(b) (McKinney 1985) (emphasis added). Section 5105(a) provides in relevant part:

Any insurer liable for the payment of *first party benefits* to or on behalf of a covered person and any compensation provider paying benefits in lieu of first party benefits ... has the right to recover the amount paid from the insurer of any other covered person to the extent that such other covered person would have been liable, but for the

of equitable subrogation as applied by New York courts. Allstate does not quarrel with the district court's ruling in so far as it held that the company may not recover no-fault medical benefits paid on behalf of Kevin Hall from the defendants under these statutes.[4] (Appellant's Br. at 15.) In addition, the plaintiff acknowledges that sections 5104(b) and 5105(a) provide the exclusive remedy for insurers seeking to bring an action to recoup "first party benefits" or the first $50,000 of no-fault benefits paid to their insured. However, Allstate contends that sections 5104(b) and 5105(a) do not bar an equitable subrogation claim to recover the remaining amount of $83,637.22 in excess of the nonrecoverable $50,000. We agree.

"As a creature of equity, the right of subrogation does not arise from, nor is it dependent upon, statute or the terms of a contract of insurance." *Gibbs*, 966 F.2d at 106; *see also Kozlowski*, 408 N.Y.S.2d at 1004; 16 Couch, *supra*, § 61:20. One court stated this axiom in the following manner:

> If the insured were permitted to keep the payment from [the insurer] under his additional endorsement and recover from [the tortfeasor] for extended economic loss, he would sustain a double recovery. Such result is clearly not contemplated under the no-fault statutory scheme. Subrogation is the principle which exists to prevent double recovery by the insured and to force the wrongdoer to bear the ultimate costs. The purpose of the statutory scheme is to make whole an injured party, not to provide him with a windfall.

provisions of this article, to pay damages in an action at law. In any case, the right to recover exists only if at least one of the motor vehicles involved is a motor vehicle weighing more than six thousand five hundred pounds unloaded or is a motor vehicle used principally for the transportation of persons or property for hire.

N.Y. Ins. Law § 5105(a) (emphasis added).

4. The district court concluded that Allstate could not recover pursuant to section 5104(b) because the statute provides relief only in

*Scinta v. Kazmierczak*, 59 A.D.2d 313, 399 N.Y.S.2d 545, 548 (4th Dep't 1977). As a corollary, the doctrine of equitable subrogation must be liberally applied for the protection of insurers, its intended beneficiaries. *See Federal Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 553 N.Y.S.2d 291, 552 N.E.2d 870, 873 (1990); *Ocean Accident & Guarantee Corp. v. Hooker Electrochemical Co.*, 240 N.Y. 37, 147 N.E. 351, 353 (1925); *Home Ins. Co. v. Bernstein*, 172 Misc. 763, 16 N.Y.S.2d 45, 48 (N.Y.Mun.Ct.1939).

An analysis of sections 5104(b) and 5105(a) reveals that these statutes only apply to "first party benefits" paid by an insurer to an insured pursuant to an insurance policy. First party benefits are defined as "payments to reimburse a person for *basic economic loss* on account of personal injury arising out of the use or operation of a motor vehicle" less specified deductions. N.Y. Ins. Law § 5102(b) (emphasis added). Basic economic loss is defined as "up to fifty thousand dollars per person of the following combined items, subject to the limitations of section five thousand one hundred eight of this article." N.Y. Ins. Law § 5102(a). These definitions clearly show that first party benefits, as used in sections 5104(b) and 5105(a), are capped at $50,000. While these statutes establish exclusive remedies for the recoupment of first party payments, *see State-Wide Ins. Co. v. Buffalo Ins. Co.*, 105 A.D.2d 315, 483 N.Y.S.2d 393, 399 (2d Dep't 1984), nothing prohibits an insurer from recovering amounts paid in excess of first party benefits. New York

actions brought against a "noncovered person." Since Mazzola was insured by Royal at a level above that required by New York law, he constituted a covered person, rather than a non-covered person as required by section 5104(b). The district court also found that the requirements of section 5105(a) were not satisfied because the vehicles involved in the accident each weighed less than six thousand five hundred pounds unloaded and were not used principally for the transportation of persons or property for hire.

courts consistently distinguish between first party benefits, which compensate a party for basic economic loss, and losses above and beyond this amount. *See State–Wide Ins.*, 483 N.Y.S.2d at 399–400; *Palmer v. Allstate Ins. Co.*, 101 A.D.2d 127, 475 N.Y.S.2d 436, 442 (2d Dep't 1984). Accordingly, we hold that Allstate's inability to recover under sections 5104(b) and 5105(a) does not prevent it from recovering $83,657.22 under the doctrine of equitable subrogation.

### III. *Effect of a Release on Insurer's Subrogation Rights*

The second issue concerns whether the Halls' written release of claims against Mazzola and First Fidelity terminated Allstate's right to recover as an equitable subrogee. The district court based its decision on the principle that a subrogee maintains only those rights of recovery possessed by the subrogor had the benefits not been paid. *See Gibbs*, 966 F.2d at 106; *Great Am. Ins. Co. v. United States*, 575 F.2d 1031, 1034 (2d Cir.1978); *Federal Ins.*, 553 N.Y.S.2d 291, 552 N.E.2d at 872. As a general matter, a subrogation claim by an insurer "depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured." *Great Am. Ins.*, 575 F.2d at 1034; *see also American Sur. Co. of N.Y. v. Town of Islip*, 268 A.D. 92, 48 N.Y.S.2d 749, 751 (2d Dep't 1944); 16 Couch, *supra*, §§ 61:212, 61:285. "When an insured settles with or releases a third party from liability for a loss that the third party has caused, the insurer's subrogation rights against such party may be destroyed." *Gibbs*, 966 F.2d at 106; *see also* 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4092 (1972). Applying this principle, the district court reasoned that when the Halls executed the release with the defendants, they waived Allstate's subrogation rights as well. *See Allstate*, 986 F.Supp. at 758. However,

the court failed to recognize a well-established exception to this rule.

An insurer's right of subrogation attaches, by operation of law, upon its payment of an insured's loss. *See, e.g., Gibbs*, 966 F.2d at 106; *Winkelmann*, 626 N.Y.S.2d 994, 650 N.E.2d at 844; *Federal Ins.*, 553 N.Y.S.2d 291, 552 N.E.2d at 872; *Government Employees Ins. Co. v. Halfpenny*, 103 Misc.2d 128, 425 N.Y.S.2d 212, 217 (N.Y.Sup.Ct.1980); 16 Couch, *supra*, § 61:4; 6A Appleman, *supra*, § 4051. At that time, the insurer becomes subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss. *See Phoenix Ins. Co. v. Erie and W. Transp. Co.*, 117 U.S. 312, 320–21, 6 S.Ct. 750, 29 L.Ed. 873 (1886); *Winkelmann*, 626 N.Y.S.2d 994, 650 N.E.2d at 844; 16 Couch, *supra*, § 61:4. Allstate made $133,637.22 worth of medical payments on behalf of Kevin Hall prior to the date the Halls executed the release with Mazzola and First Fidelity. Thus, Allstate's right of subrogation had accrued before the release was executed, and there existed no defense to the prosecution of an action against the defendants at that time.

Where a third party tortfeasor obtains a release from an insured with knowledge that the latter has already been indemnified by the insurer or with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such release does not bar the insurer's right of subrogation. *See, e.g., Gibbs*, 966 F.2d at 107; *Hamilton Fire Ins. Co. v. Greger*, 246 N.Y. 162, 158 N.E. 60, 62 (1927); *Ocean Accident*, 147 N.E. at 353–54; *Kozlowski*, 408 N.Y.S.2d at 1005; *Home Ins.*, 16 N.Y.S.2d at 48; 16 Couch, *supra*, § 61:201; 6A Appleman, *supra*, § 4092. "The authorities are in agreement that a release given to a tort-feasor who has knowledge of the insurer's rights will not preclude the insurer from enforcing its right of subrogation against the wrongdoer." [5] *Silinsky v.*

---

5. Other jurisdictions also hold that no act by

the insured releasing a wrongdoer from liabil-

State–Wide Ins. Co., 30 A.D.2d 1, 289 N.Y.S.2d 541, 545–46 (2d Dep't 1968) (citations omitted); see also Aetna Cas. & Sur. Co. v. S. Siskind & Sons, Inc., 209 A.D.2d 215, 618 N.Y.S.2d 314, 315 (1st Dep't 1994); (holding that an insured's release did not bar an insurer's subrogation claim against the tortfeasor); Aetna Cas. & Sur. Co. v. Schulman, 70 A.D.2d 792, 417 N.Y.S.2d 77, 79 (1st Dep't 1979). Otherwise, a release would operate as a fraud upon the insurer. See Ocean Accident, 147 N.E. at 354. This standard applies easily to this case. If Mazzola and First Fidelity effected a settlement and a release of liability from the Halls without consent from Allstate, and with actual or constructive knowledge that Allstate had already paid benefits to the Halls and thus obtained subrogation rights, the release does not preclude Allstate's right of subrogation against the defendants.

The evidence establishes a genuine issue of material fact regarding whether Mazzola and First Fidelity obtained the release with either actual knowledge that the Halls had already been indemnified by Allstate or with information that, reasonably pursued, should have given the defendants knowledge of the existence of Allstate's subrogation rights. Specifically, paragraph seven of the defendants' Local Rule 3(g) Statement of Material Facts in support of defendants' motion for summary judgment acknowledges that the Halls had applied for no-fault benefits under their insurance policy. (App. at 39.) In addition, the defendants likely were aware that Kevin Hall suffered burns on over 30% of his body, thus incurring significant medical expenses. Given that the defendants may have had actual or constructive knowledge

that Allstate's subrogation rights had attached, a genuine issue of material fact appears on the record concerning whether the release bars Appellant's subrogation rights. See, e.g., S. Siskind, 618 N.Y.S.2d at 315. As a result, we vacate the district court's award of summary judgment and remand the case for further proceedings.

## CONCLUSION

Because we find that the plaintiff may maintain an equitable subrogation claim under New York common law and that genuine issues of material fact exist regarding whether the defendants executed the release with actual or constructive knowledge that plaintiff's subrogation rights had attached, the district court's grant of summary judgment for the defendants is vacated. The case is remanded for further proceedings consistent with this opinion, including the determination as to choice of law. If New Jersey law controls, judgment in favor of defendants may be entered on the ground that Allstate appealed only from the portion of the prior judgment addressing New York law.

---

ity defeats the insurer's right of subrogation when the wrongdoer has knowledge of the insurer's subrogation rights and the insurer has not consented to the release. See, e.g., Miller v. Auto–Owners Ins. Co., 392 So.2d 1201 (Ala.Civ.App.1981); Aetna Cas. & Sur. Co. v. Westinghouse Elec. Co., 176 Ga.App. 748, 337 S.E.2d 390 (1985); City of N.Y. Ins. Co. v. Tice, 159 Kan. 176, 152 P.2d 836 (1944); Farm Bureau Mut. Ins. Co. v. Orr, 379 N.W.2d 596 (Minn.Ct.App.1985); Travelers Indem. Co. v. Chumbley, 394 S.W.2d 418 (Mo. Ct.App.1965); Nationwide Mut. Ins. Co. v. Spivey, 259 N.C. 732, 131 S.E.2d 338 (1963); Hospital Serv. Corp. of R.I. v. Pennsylvania Ins. Co., 101 R.I. 708, 227 A.2d 105 (1967); Landsdowne–Moody Co. v. St. Clair, 613 S.W.2d 792 (Tex.Civ.App.1981); Nationwide Mut. Ins. Co. v. Dairyland Ins. Co., 191 W.Va. 243, 445 S.E.2d 184 (1994).