212 P.3d 43

**MONTEREY HOMES ARIZONA, INC., an Arizona corporation; Monterey Homes Construction, Inc., an Arizona corporation, Defendants/Third–Party Plaintiffs/Appellees,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Applicant for Intervenor/Appellant.**

No. 1 CA–CV 08–0056.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 10, 2009.

Koeller, Nebeker, Carlson & Haluck, L.L.P. By William A. Nebeker and Marcus D. Tappe, Phoenix, Attorneys for Defendants/Third–Party Plaintiffs/Appellees.

Meagher & Geer, P.L.L.P. By Thomas H. Crouch and Rob A. Justman, Scottsdale, Attorneys for Applicant for Intervenor/Appellant.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of third-party construction defect indemnity and breach claims filed by defendants/appellees Monterey Homes Arizona, Inc., and Monterey Homes Construction, Inc. (collectively "Mon-

terey"), against one of their trade subcontractors, BBP Concrete Company, Inc. ("BBP"). BBP tendered its defense against Monterey's claims to its insurer, applicant for intervenor/appellant Federated Mutual Insurance Company ("Federated"). Federated defended BBP under a reservation of rights and began to, and did, pay for its defense. Ultimately, without Federated's consent, BBP entered into what was essentially a walk-away settlement with Monterey—BBP and Monterey released each other from all claims and agreed to "no indemnity or defense payments." Nevertheless, asserting it had become subrogated to BBP's rights to recover the "defense payments" from Monterey regardless of the settlement, Federated moved to intervene in the case so it could do so. The superior court denied intervention.

¶ 2 On appeal, Federated asserts the superior court should have allowed it to intervene. It argues that, as BBP's subrogee, it had a legally enforceable right to recover from Monterey the fees and expenses it had incurred in defending BBP, and this right remained unaffected by BBP's release because Monterey knew of Federated's subrogation rights before it obtained the release.

¶ 3 In making these arguments, however, Federated ignores that it defended BBP under a reservation of rights and, in so doing, relinquished control of the litigation to BBP for purposes of negotiating a settlement. Accordingly, BBP was entitled to negotiate a settlement that released Monterey from "defense payments." Whether Federated became bound by the settlement and lost its subrogation rights or remained unaffected by the settlement and could pursue Monterey for the defense payments depends on, first, whether Federated received appropriate notice of the settlement and, second, whether the settlement was reasonable and prudent under the circumstances. To decide these questions, Federated should have been allowed to intervene. Thus, we reverse for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 4 In August 2004, several homeowners in a residential housing development in Scotts-

dale, Arizona, filed a construction defect lawsuit against Monterey. Monterey denied the homeowners' claims and filed a third-party complaint against several of its trade subcontractors, including BBP, alleging contractual and common law indemnity and various breach claims. BBP tendered its defense against Monterey's claims to its general liability insurers, which included Federated. Federated defended BBP under what Federated described as a "complete reservation of rights" and retained counsel to represent BBP in the litigation. BBP denied Monterey's claims and requested an award of attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003).

¶ 5 Given the nature and extent of the homeowners' claims against Monterey and Monterey's claims against BBP, the litigation was predictably expensive. By June 2006, Federated had paid on BBP's behalf $759,624 for attorneys' fees, expert witness fees and other litigation costs.

¶ 6 On June 8, 2006, BBP submitted an offer of judgment to Monterey under Arizona Rule of Civil Procedure 68 and stated it would allow judgment to be entered against it and in favor of Monterey in the sum of $100,100 plus an additional $100,100 for attorneys' fees and costs. Monterey did not accept the offer, and it lapsed. The litigation continued, and Federated continued to pay for BBP's defense.

¶ 7 Monterey, BBP and Federated participated in settlement discussions and several mediation sessions. A sticking point in the settlement efforts concerned the attorneys' fees and other expenses, including expert witness fees, paid by Federated on BBP's behalf. Federated advised Monterey it believed Monterey's third-party claims against BBP were meritless and contended Monterey would be assessed attorneys' fees under A.R.S. § 12–341.01 and expert witness fees under Rule 68 (collectively "defense payments").

¶ 8 Eventually, at a June 25, 2007, mediation session—attended by representatives of Monterey, BBP and Federated—Monterey and BBP agreed to what was in essence a

walk-away settlement—each party agreed to release all claims it had against the other and to "no indemnity or defense payments." The handwritten agreement provided:

> Pursuant to Rule 80(d), Monterey & BBP agree to mutual dismissal with prejudice of all actions & mutual release of all claims in return for no indemnity or defense payments by BBP to Monterey & no indemnity or defense payments by Monterey to BBP. This agreement also is for the benefit of all insurers for both parties.

Federated was not a party to this agreement nor did it consent to it.

¶ 9 After some delay, on October 9, 2007, the superior court, pursuant to a stipulation submitted to it by Monterey and BBP, dismissed Monterey's third-party complaint against BBP "with prejudice and without an award of costs or attorneys' fees."[1]

¶ 10 On October 29, 2007, Federated moved to intervene as a matter of right or permissibly under Arizona Rule of Civil Procedure 24(a) and (b), respectively, to assert a subrogation claim against Monterey to recover the defense payments it had incurred in defending BBP.[2] Federated asserted that although BBP could release its own rights to recover the defense payments, BBP could not release Federated's rights to recover them. The superior court ultimately denied Monterey's motion, reasoning Federated could seek subrogation from Monterey in an independent action.

¶ 11 Federated timely appealed. We have jurisdiction. See A.R.S. § 12–2101(D) (2003); *McGough v. Ins. Co. of N. Am.*, 143 Ariz. 26, 30, 691 P.2d 738, 742 (App.1984).

## DISCUSSION

¶ 12 As it did in superior court, Federated argues on appeal it should have been allowed to intervene as a matter of right under Rule 24(a) or, alternatively, permissibly under Rule 24(b),[3] to assert its subrogation claim for defense payments against Monterey.[4] As discussed below, we hold Federated should have been allowed to intervene as a matter of right, although for reasons different from those asserted by Federated. See *infra* ¶ 27. To properly explain why intervention should have been permitted under Rule 24(a), we must first address Monterey's contention that Federated's subrogation interest in the defense payments had been extinguished by the settlement between Monterey and BBP. As Monterey essentially argues, if Federated did not have a legally cognizable subrogation claim, then intervention would have been futile. Although legal futility is not mentioned in Rule 24, other courts have held futility is a proper basis for denying a motion to intervene. See *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir.1998) (affirming district court's denial of motion to intervene on futility grounds); *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C.Cir.1988) (require-

---

1. The court dismissed the homeowners' complaint against Monterey with prejudice on October 11, 2007.

2. Under Rule 24, intervention is a matter of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action," and is "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Ariz. R. Civ. P. 24(a). Intervention is permissive when an applicant's claim and the main action share a common question of law or fact. Ariz. R. Civ. P. 24(b).

3. We review de novo whether an applicant is entitled to intervene as a matter of right under Rule 24(a). *Purvis v. Hartford Accident & Indem. Co.*, 179 Ariz. 254, 257, 877 P.2d 827, 830 (App. 1994). In contrast, we review the superior

court's denial of permissive intervention under Rule 24(b) for abuse of discretion. *Allen v. Chon–Lopez*, 214 Ariz. 361, 364, ¶ 9, 153 P.3d 382, 385 (App.2007).

4. Arizona case law supports Federated's argument that in some circumstances it may be able to recover its defense payments from Monterey through a subrogation claim. See *PPG Indus., Inc. v. Cont'l Heller Corp.*, 124 Ariz. 216, 221–22, 603 P.2d 108, 113–14 (App.1979); *Howard P. Foley Co. v. Employers–Commercial Union*, 15 Ariz.App. 350, 352–53, 488 P.2d 987, 989–90 (1971). Courts in other jurisdictions have also recognized this. See, e.g., *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638–39 (11th Cir.1991); *Safway Rental & Sales Co. v. Albina Engine & Machine Works, Inc.*, 343 F.2d 129, 135 (10th Cir.1965).

ment that intervenor have legally cognizable interest depends in part on whether intervenor has stated legally sufficient claim). Thus, we turn to the issue of futility first.

¶ 13 To determine whether intervention would have been futile, we begin with the reason why Federated asserts it was entitled to intervene in the first place. Federated argues it was entitled to intervene, either as a matter of right or permissibly, because it had a legally cognizable claim for subrogation against Monterey to recover the defense payments it had incurred in defending BBP.[5] Federated correctly notes that, generally, when an insurer has paid a loss suffered by its insured, the insurer becomes subrogated to the insured's claim against the party primarily liable for the loss and may enforce that claim against that party. *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999); *Allied Mut. Ins. Co. v. Heiken,* 675 N.W.2d 820, 824 (Iowa 2004); 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 4051, at 103 (rev. ed.1972) [hereinafter Appleman]; 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 222:5 (3d ed. 2000 & Supp.2008) [hereinafter *Couch* ]. But, because an insurer's right to subrogation derives from its insured's right to recover against the third party, the actions of the insured may affect the insurer's right to subrogation. *Heiken,* 675 N.W.2d at 824. The insurer essentially stands in the shoes of the insured, taking on the insured's rights and remedies as against the third party but also becoming subject to the defenses the third party could assert against the insured. *Mazzola,* 175 F.3d at 260; *Heiken,* 675 N.W.2d at 824–25. Accordingly, if the insured releases its claims against the third party—even without the insurer's consent—the insurer will be barred from asserting that claim against the third party by way of subrogation. *Mazzola,* 175 F.3d at 260; *Heiken,* 675 N.W.2d at 825.

¶ 14 As Federated also correctly notes, however, most courts recognize an important exception to this rule: an insurer will retain its rights to pursue subrogation from the third party if the third party knew of the insurer's subrogation interests before it obtained the release from the insured. *See, e.g., Mazzola,* 175 F.3d at 260–61 (citing cases); *Griffin v. Calistro,* 229 Cal.App.3d 193, 280 Cal.Rptr. 30, 32 (1991); *Home Ins. Co. v. Hertz Corp.,* 71 Ill.2d 210, 16 Ill.Dec. 484, 375 N.E.2d 115, 116–18 (1978) (citing cases); *Heiken,* 675 N.W.2d at 827. *See also* 6A Appleman § 4092, at 246; 16 Couch § 224:113. This exception, which Federated relies on here, is based on equity.

¶ 15 Putting these principles together, Federated argues BBP's release was incapable of extinguishing its right to assert a subrogation claim against Monterey because Monterey knew, before it obtained the release, that Federated had paid for BBP's defense costs and had become subrogated to BBP's rights to recover the defense payments from Monterey. Thus, Federated argues it had a legally cognizable subrogation claim and was entitled to intervene to assert that claim against Monterey.

¶ 16 To these arguments, Monterey responds Federated has failed to take into account the legal effect of its decision to defend BBP under a "complete reservation of rights." In Arizona, when, as here, an insurer provides its insured with a defense under a reservation of rights, the insurer is deemed to have relinquished control of the litigation to the insured and permitted the insured "to step into the insurer's shoes for purposes of settlement negotiations." *See Parking Concepts, Inc. v. Tenney,* 207 Ariz. 19, 24, ¶ 24, 83 P.3d 19, 24 (2004). This has been the case since our supreme court decided *United Services Automobile Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987). As Monterey views the situation, because Federated defended BBP under a reservation of rights and did not directly challenge the reasonableness of the settlement between Monterey and BBP, Federated became bound by the terms of that settlement and lost its subrogation rights to recover the defense payments. Thus, there was no reason for the superior

---

5.  In making this argument, Federated relies on a provision in its policy with BBP stating "if the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us."

court to allow Federated to intervene to assert a subrogation claim because no such claim existed; intervention would have been futile.

¶ 17 Although we agree with Monterey that Federated's defense of BBP under a reservation of rights affects the principles Federated relies on in asserting its right to intervene, we do not agree with Monterey that simply by defending under a reservation of rights, Federated necessarily forfeited its subrogation rights and, thus, intervention would have been futile. Although Federated did not directly argue it was entitled to intervene to contest the reasonableness of the settlement, by virtue of its motion to intervene to pursue a subrogation claim, it was in effect contesting the reasonableness of the settlement. Accordingly, subject to the principles we establish today, *see infra* ¶ 26, Federated was entitled to intervene. We believe such a result is required by *Morris*.

¶ 18 In *Morris*, our supreme court held an insured defended under a reservation of rights may enter into a settlement with a claimant without breaching the cooperation clause of the insurance policy. 154 Ariz. at 119, 741 P.2d at 252. In so holding, the court recognized an insurer and an insured have conflicting interests when a defense is offered with a reservation of rights. *Id.* at 118–19, 741 P.2d at 251–52. An insurer with a good-faith potential coverage defense may properly reserve its rights to assert a coverage defense, and in so doing, will not breach its policy obligations. *Id.* at 118, 741 P.2d at 251. Nevertheless, when it defends under a reservation of rights, the insurer has not accepted full responsibility to its insured for the insured's liability exposure. *Id.* As a result, the insured is placed in a "precarious position." *Id.* The insured may not only face the potential of a judgment in excess of policy limits, but even if a judgment within policy limits is rendered, the insured may not have coverage under the policy if the insurer prevails on the coverage defenses. *Id.*

¶ 19 *Morris* attempted to reconcile these conflicting interests. Thus, when the insurer defends under a reservation of rights, control of the litigation for settlement shifts to the insured. *Id.* at 119, 741 P.2d at 252.

¶ 20 In *Parking Concepts*, our supreme court reiterated that when, as in *Morris* and here, an insurer defends its insured under a reservation of rights, the insurer turns control of the litigation over to the insured for purposes of negotiating a settlement. The court explained:

Thus, while the cooperation clause of the insurance contract normally allows only the insurer to negotiate a settlement, when the insurer defends under a reservation of rights, *Morris* permits the insured to step into the insurer's shoes for purposes of settlement negotiations. In this limited circumstance, *Morris* allows the insured to act as a *surrogate* for the insurer; he is engaging in settlement discussions that the insurer would typically have undertaken in the absence of the reservation of the right to contest coverage.

207 Ariz. at 24, ¶ 24, 83 P.3d at 24.

¶ 21 Although the issue in *Morris*—whether the cooperation clause prevented the insured being defended under a reservation of rights from protecting itself through a settlement—is different from the one presented here, the conflicting interests described in *Morris* when the insured is being defended under a reservation of rights are presented here. If, instead of relying on the cooperation clause, the insurer relies on its subrogation rights under the policy to object to the settlement and force its insured to negotiate a settlement that maintains those rights, it is less likely the insured will be able to negotiate a settlement with its opponent. Thus, the insured will continue to face the possibility of a judgment in excess of policy limits or one not covered by the policy. From a practical standpoint, the insurer, not the insured, will once again be in control of the litigation for purposes of settlement. The insurer can, through its subrogation rights, hamstring the insured's ability to negotiate a settlement even though it has not accepted full responsibility to the insured for the insured's liability exposure. This is not consistent with *Morris*.

¶ 22 Accordingly, consistent with the principles established in *Morris*, we hold the insurer's subrogation rights will not limit

the insured from entering into a settlement that releases those rights when, as here, the insured is being defended under a reservation of rights. As our supreme court has recognized, when an insurer defends under a reservation of rights, the insured steps "into the insurer's shoes for purposes of settlement negotiations." *Parking Concepts*, 207 Ariz. at 24, ¶ 24, 83 P.3d at 24. Except as discussed below, *see infra* ¶ 26, this transfer of control allows the insured to compromise or release the subrogation rights of the insurer even if the insured's opponent knows of these rights before it settles with the insured.

¶ 23 In so holding, we reject Federated's assertion that its defense of BBP under a reservation of rights did not affect its subrogation rights because "Federated's subrogation interest vested the moment it incurred attorneys' fees and expert witness fees on BBP's behalf." [6] If, as Federated argues, an insurer's subrogation rights truly "vested" the moment the insurer made payments on behalf of its insured, there would be no reason for the rule cited by Federated that an insurer retains its rights to pursue subrogation from a third party if the third party knows of the insurer's subrogation interest before it obtains a release from the insured. As noted above, *see supra* ¶¶ 13–14, this rule is an exception to the general rule that, because subrogation rights are derivative, an insurer may be bound by an insured's release of its claims against a third party, thus barring any claims the insurer may have other-

wise been able to assert against that third party by way of subrogation. Therefore, Federated's argument that BBP could not release Federated's subrogation interest in the defense payments because Federated, rather than BBP, "owned" that claim is legally unsupportable. Consequently, we agree with Monterey to the extent it argues Federated's defense of BBP under a reservation of rights permitted BBP to release Federated's subrogation interest in the defense payments through its settlement with Monterey regardless of whether Monterey knew of that interest before it entered into the settlement.

¶ 24 We part company with Monterey, however, insofar as it argues Federated is unconditionally bound by BBP's release and no further analysis is necessary because of the reservation of rights. We recognize, as the court in *Morris* did, that in negotiating a settlement while being defended under a reservation of rights, the insured may have little incentive to minimize the amount of the judgment or, as Federated suggests here, may instead throw in the proverbial towel, even though the claims asserted against it are of questionable merit, albeit costly to defend. *Morris* protected the insurer from these hazards by requiring the insured to give the insurer appropriate notice before settling. 154 Ariz. at 119, 741 P.2d at 252 ("Such agreements must be made fairly, with notice to the insurer, and without fraud or collusion on the insurer."). *See also Parking Concepts*, 207 Ariz. at 22, ¶ 13, 83 P.3d at 22 ("[A]

---

**6.** In making its "vested" argument, Federated relies on *Allstate Insurance Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978). This case does not support Federated's argument. The issue in *Druke* was the enforceability of a policy provision that required the insured to repay the insurer for medical expenses paid by the insurer out of any proceeds recovered by the insured from a third-party tortfeasor. *Id.* at 301–02, 576 P.2d at 489–90. Our supreme court held the provision was unenforceable, concluding it amounted to an assignment of the insured's cause of action against the tortfeasor for personal injuries. *Id.* at 304, 576 P.2d at 492. In so holding, the court rejected the insurer's argument that its interest in the recovered proceeds did not constitute an assignment of a personal injury claim because its interest would not accrue until after the claim had been reduced to a judgment or settlement. *Id.* The court reasoned the insurer's right to recovery had come into "existence at the creation of

the insurance contract." *Id.* In making this statement, however, the court by no means implied the right had vested; indeed, the court ultimately held the insurer's right was unenforceable.

Likewise, although Federated may have had an interest in the defense payments by virtue of its policy with BBP, its interest was not "vested" in the sense of creating an absolute right to subrogation. Under general principles of subrogation, an insurer has no right to subrogation, whether contractual or by common law, unless it has first paid a loss covered by the policy. *See generally* 16 *Couch* § 223:3. In other words, there can be no right to subrogation unless there has been a payment. But payment by itself does not mean subrogation becomes absolute, and an insured may subsequently impair its insurer's subrogation rights even after payment has been made. *See supra* ¶ 13.

*Morris* agreement must be preceded by appropriate notice to the insurer; if the insurer then removes its reservation of rights and 'unconditionally assumes liability under the policy,' the cooperation clause's prohibition against settling without the insurer's consent applies in full force." (quoting *Morris,* 154 Ariz. at 119, 741 P.2d at 252)).

¶ 25 *Morris* also protected the insurer by holding that neither the fact nor amount of liability would be binding on the insurer unless the insured or claimant could show that the settlement was reasonable and prudent under the circumstances, that is, what a reasonably prudent person in the insured's position would have settled for on the merits of the claimant's case. 154 Ariz. at 120–21, 741 P.2d at 253–54. As further explained in *Parking Concepts,* when evaluating a settlement for reasonableness,

> the superior court should apply the same criteria that must be applied by the insurer under its implied contractual covenant of good faith and fair dealing in evaluating a settlement proposal in the absence of a reservation of rights. These include "the facts bearing on the liability and damages aspects of claimant's case, as well as the risk of going to trial." The insurer is also contractually required to consider, even when the merits of the claimant's case are fairly debatable, the financial risk that an adverse judgment in excess of policy limits may have on the insured.

207 Ariz. at 24, ¶ 26, 83 P.3d at 24 (citations omitted) (quoting *Morris,* 154 Ariz. at 121, 741 P.2d at 254).

¶ 26 In our view, the safeguards—appropriate notice and reasonableness—adopted by *Morris* for protecting an insurer when an insured defended under a reservation of rights settles without the insurer's consent should also apply when an insured defended under a reservation of rights enters into a settlement that releases the subrogation rights of the insurer. This is so even when, as here, the settlement does not subject the insurer to any other financial consequences as would be the case if the insured had entered into a typical *Morris* or other similar agreement. When the standards for appropriate notice and a reasonable and prudent settlement established by our supreme court in *Morris* and *Parking Concepts* are met, the subrogation rights of the insurer should be deemed extinguished. If, however, the settlement does not meet those standards, the insurer should retain its rights to pursue subrogation.

¶ 27 Applying these principles here, Federated should have been allowed to intervene under Rule 24(a) to contest the appropriateness of notice [7] and the reasonableness of BBP's settlement with Monterey.[8] *See H.B.H. v. State Farm Fire & Cas. Co.,* 170 Ariz. 324, 329–31, 823 P.2d 1332, 1337–39 (App.1991) (error to deny insurer's motion to intervene under Rule 24(a) to contest reasonableness of *Morris* agreement between insured defended under a reservation of rights and claimant). This is so even though Federated could have brought its subrogation claim in a separate action. *Id.* at 329–30, 832 P.2d at 1337–38 (most appropriate time to challenge the reasonableness of a *Morris* agreement between insured and claimant is during the underlying action when all parties are present); *Anderson v. Martinez,* 158 Ariz. 358, 363, 762 P.2d 645, 650 (App.1988) (insurer not required to wait and contest reasonableness of a *Morris* agreement entered into by its insured in a separate action; intervention appropriate when "it would serve the purpose of judicial economy to permit the insurer to take this opportunity when all of the parties are involved and can present evidence to the court on the issue at one hearing").

7. Although the record reflects Federated knew settlement discussions were taking place between Monterey and BBP, and indeed participated in those discussions, *see supra* ¶¶ 7–8, the record does not reveal whether Federated was given appropriate notice of the proposed settlement before Monterey and BBP entered into their agreement, such that it was afforded an opportunity to remove its reservation of rights and unconditionally acknowledge coverage under the policy.

8. Because we hold Federated was entitled to intervene as a matter of right under Rule 24(a), we do not address whether the superior court abused its discretion in denying permissive intervention under Rule 24(b).

¶ 28 On remand, Monterey will have the burden of showing, first, Federated received appropriate notice of its settlement with BBP and, second, the settlement was reasonable and prudent under the circumstances. If Monterey successfully shows Federated received appropriate notice and the settlement was reasonable and prudent under the circumstances, Federated will not be entitled to pursue its subrogation claim as an intervenor and will be bound by the settlement between Monterey and BBP. If, however, Monterey fails to show Federated received appropriate notice, Federated will be entitled to pursue its subrogation claim for the defense payments. Likewise, if Monterey successfully shows Federated received appropriate notice but fails to show the settlement was reasonable and prudent under the circumstances, Federated may pursue its subrogation claim.[9]

## CONCLUSION[10]

¶ 29 The order of the superior court denying Federated's motion to intervene is reversed. This case is remanded [11] for further proceedings consistent with this opinion.

CONCURRING: DONN KESSLER, Judge and JOHN C. GEMMILL, Judge.

---

9. The parties have not briefed whether, applying *Morris*, Federated would be entitled to seek subrogation for all of the defense payments or only a portion thereof if Monterey demonstrates its settlement with BBP was partially, although not entirely, reasonable. Because this issue is not properly before us, we decline to address it.

10. Both parties have requested an award of attorneys' fees on appeal. Because neither party has yet to prevail on the merits, we deny their requests with leave to the superior court to con-

sider awarding the successful party its reasonable attorneys' fees on appeal. Federated is, however, entitled to an award of costs on appeal under A.R.S. § 12–341 (2003) upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

11. If, on remand, Federated becomes entitled to pursue its subrogation claim, it will be subject to the requirements of A.R.S. § 12–341.01 and Rule 68, including all reasonableness requirements.