**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, as subragee of Tourism and Sports Authority, DBA Arizona Sports & Tourism Authority, | No. 12-15170 |
| Plaintiff - Appellant, | D.C. No. 2:11-cv-00965-JAT |
| v. | MEMORANDUM[*] |
| CROWN CORR INC., an Indiana corporation, | |
| Defendant - Appellee. | |

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, as subragee of Tourism and Sports Authority, DBA Arizona Sports & Tourism Authority, | No. 12-16663 |
| Plaintiff - Appellant, | D.C. No. 2:11-cv-00965-JAT |
| v. | |
| CROWN CORR INC., an Indiana corporation, | |
| Defendant - Appellee. | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

┌─────────────────────────────────────┐
│                                     │
│                                     │
└─────────────────────────────────────┘

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, Senior District Judge, Presiding

Argued and Submitted March 11, 2014
San Francisco, California

Before: THOMAS, FISHER, and BERZON, Circuit Judges.

Plaintiff-appellant The Travelers Indemnity Co. ("Travelers") appeals the district court's decision to grant defendant-appellee Crown Corr, Inc.'s ("Crown Corr") motion to dismiss Travelers' two contract claims and one tort claim. Because the parties are familiar with the facts and procedural history of the case, we need not recount them here.

We have jurisdiction under 28 U.S.C. § 1291. "We review de novo a dismissal under [Fed. R. Civ. P.] 12(b)(6) for failure to state a claim." *Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1340 (9th Cir. 1992). We also "review a district court's application of state substantive law in diversity actions de novo." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). For the reasons discussed below, we affirm the district court's decision.

I

A

The district court dismissed Travelers' contract claims on the basis of the subrogation waiver in Section 11.4.6 of the Design/Build Agreement ("agreement"), which set out parameters for the construction of the University of Phoenix Stadium ("stadium"). Section 11.4.6 reads, in its entirety:

> The Parties waive subrogation against one another, the Design/Builder, Design Consultants, Subcontractors, and their respective agents and employees on all property and consequential loss policies that may be carried by any of them on adjacent properties and under property and consequential loss policies purchased for the Facility.

When Arizona courts interpret contracts, they "attempt to ascertain and give effect to the intention of the parties at the time the contract was made if at all possible." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1139 (Ariz. 1993) (internal quotation marks omitted). The Arizona Supreme Court has instructed that a "judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Id.* at 1140. However, a court "need not waste much time if the

asserted interpretation is unreasonable or the offered evidence is not persuasive." *Id.* at 1141.

The district court did not err in concluding that Section 11.4.6 was not "reasonably susceptible" to Travelers' proffered interpretation and therefore rejecting Travelers' parol evidence. Travelers contends that the district court erred in interpreting the term "Facility" in Section 11.4.6 to mean "the Stadium after it is fully operational." However, Travelers fails to put forth a narrower reading that shows the term refers *only* to the stadium *before* substantial completion. At most, Travelers establishes that the term refers to the stadium *both* before and after substantial completion. For example, Travelers notes that in Recital A of the agreement, "Facility" is used as a shorthand version of the term "multipurpose stadium facility" and that the Recital states that the Authority is empowered to "construct, finance, furnish, maintain, improve, own, operate, market and provide" the "Facility." Travelers argues that because the agreement envisions "construct[ing]" and "financ[ing]" the Facility, both of which will occur before completion, the term could apply to the stadium before completion. Similarly, Travelers argues that the terms "Work" and "Project," refer to the services necessary to complete the stadium and the construction process, not the pre-completion stadium itself, so that "Facility" could still be used pre-completion.

4

Even if Travelers is correct as to both of these arguments, it only succeeds in showing that the term applies to the stadium before and after completion. Indeed, if the fact that Recital A uses "construct" and "finance" in describing the early stages of the stadium shows that the term "Facility" could apply to the pre-completion stadium, the fact that "maintain," "operate," and "market" are also used shows that "Facility" must also apply to the stadium after completion and throughout its lifetime.

Travelers also cites several sections, including Sections 1.5, 1.8.1, and 2.1.1, that use adjectives beyond the term "Facility" itself to describe the "completed and fully operational Facility." It argues these phrases show that "Facility" cannot refer only to the post-completion stadium. But, again, Travelers' argument does not establish that "Facility" refers only to the *pre-completion* stadium. Moreover, in other provisions, like Recitals A and B, and Sections 1.7.1.10, 2.8.1.b, 11.4.1.m, the contract refers to "Facility" in a way that describes a post-completion stadium. Indeed, Recital B forecasts that the Arizona Cardinals football team will play football games "at the Facility for thirty (30) years." In that context, the term envisions a fully completed stadium over the course of three decades. In short, the term "Facility" means the stadium at *any time*. The waiver therefore still applies today and is not "reasonably susceptible" to Travelers' more restrictive view.

5

The broader context of the Design/Build Agreement confirms our view of the subrogation waiver. Section 11.4.6 does not include any language as to how long it will be in effect. Travelers argues that the agreement was written to facilitate construction of the stadium and, as a result, it only mentions duration when a provision, like Section 2.2.20, is meant to apply beyond substantial completion. *See, e.g.*, Agreement § 2.2.20 ("The provisions of this Article [2] shall survive the completion, suspension or termination of this Agreement."). However, other sections, like Section 11.4.1, explicitly state that they will apply through substantial completion only.

Other provisions in Section 11.4 are written narrowly as well. Section 11.4.3 explains the extent to which the Authority and the Cardinals may occupy the partially completed stadium (labeled in this provision "the Work" and not "the Facility"). Section 11.4.5 contains a waiver of rights due to loss or damage to equipment used during construction. Section 11.4.4 includes a waiver of rights "for damages caused by perils covered by insurance provided under Section 11.4."

Section 11.4.6 is different from each of these provisions. It contains a subrogation waiver by the Parties against all others involved, including subcontractors, "under property or consequential loss policies purchased for the Facility." It does not limit itself to injuries or harm arising from "the Work," and it

6

does not include the Section 11.4.4 restriction that the waiver applies only to "insurance provided under Section 11.4." Instead, the language is far broader.

In sum, we conclude that Section 11.4.6 is not reasonably susceptible to Travelers' narrow interpretation. The district court did not err in rejecting that interpretation and refusing to consider Travelers' parol evidence.[1]

B

Travelers also challenges the district court's conclusion, assuming the subrogation waiver applies to Travelers, that the Authority had the ability to waive the subrogation rights of a post-construction property insurer.

Arizona courts recognize the right of an insured, when the insured is waiving its own rights, to waive its insurer's subrogation rights. *Monterey Homes Ariz., Inc. v. Federated Mut. Ins. Co.*, 212 P.3d 43, 47 (Ariz. Ct. App. 2009) (noting that "an insurer's right to subrogation derives from its insured's right to recover against a third party" and concluding that "if the insured releases its claims against the third party—even without the insurer's consent—the insurer will be barred from asserting that claim against the third party by way of subrogation").

---

[1] Both Travelers and Crown Corr cite to a number of cases from other states. These cases are of limited relevance because, unlike this case, they all involve the American Institute of Architects' ("AIA") form contract, or some close variation thereof.

The Authority waived its rights against Crown Corr. Section 11.2, in general, requires the Design/Builder (i.e., Hunt) to carry liability insurance. In Section 11.2.5, the agreement provides that Hunt, and its consultants and subcontractors via separate agreements, releases the Authority and other "Released Parties" "from any and all claims or causes of action" which Hunt or its consultants or subcontractors possess "resulting in or from or in any way connected with any loss covered and actually paid . . . by an insurance policy as agreed by the Parties hereunder." In return, that same provision states that

> [t]he Released Parties . . . release the Design/Builder . . . [and] Subcontractors . . . from any and all claims or causes of action whatsoever which any of the Released Parties might otherwise possess resulting in or from or in any way connected with any loss to the extent it is covered and actually paid by any insurance policy provided hereunder or any other insurance policy otherwise available to the Released Party or that should have been covered by any insurance policy any Released Party was required to maintain.

Hunt's agreement with Crown Corr, at Section 8.3, contains a similarly broad release provision. Crown Corr also notes that Travelers' insurance policy explicitly acknowledges that an "Insured," like the Authority, "may waive its rights against another party by specific written agreement." As a result, Travelers has implicitly acquiesced to the subrogation waiver in Section 11.4.6. Moreover, savvy insurers like Travelers have several options available, when negotiating an

8

insurance contract, for limiting the effect of a subrogation waiver. *See Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1186 (Utah 2002).

In sum, we conclude the district court did not err in determining that the Authority could waive the subrogation rights of a property insurer hired years after the property in question was completed. As a result, we conclude that the subrogation waiver in Section 11.4.6 applies to Travelers and bars its contract claims against Crown Corr.

II

The district court rejected Travelers' negligence claim under Arizona's economic loss doctrine. We affirm on a separate ground, namely that the subrogation waiver in Section 11.4.6. precludes tort claims as well as contract claims. *See Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) ("We may affirm the district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same grounds or reasoning we adopt.").

Generally, subrogation waivers apply "regardless of the nature of the claim." 2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law, Analysis of AIA General Conditions: Waivers of Subrogation, § 5:231 (2014). Travelers argues the waiver of subrogation in this case nonetheless should

9

not apply to tort claims because: (1) Arizona law requires waivers of liability for negligence to be expressed in "clear and unequivocal terms," *Sirek v. Fairfield Snowbowl, Inc.*, 800 P.2d 1291, 1295 (Ariz. Ct. App. 1990), and the Design/Build Agreement does not contain the necessary language; (2) the Design/Build Agreement, in Section 15.8.1, notes that nothing in the agreement should be read to limit rights and remedies available to the parties by law; and (3) the Arizona Constitution, article XVIII, section 5, requires that defenses in tort cases of contributory negligence or assumption of risk be heard by a jury.

Travelers is correct that exculpatory clauses, which exempt a negligent tortfeasor from liability and leave a victim with no recourse, are disfavored and construed strictly in Arizona, because such clauses "may encourage carelessness." *Sirek*, 800 P.2d at 1294-96; *see also Bothell v. Two Point Acres, Inc.*, 965 P.2d 47, 51 (Ariz. Ct. App. 1998); *Morganteen v. Cowboy Adventures, Inc.*, 949 P.2d 552, 553-56 (Ariz. Ct. App. 1997); *Mauer v. Cerkvenik-Anerson Travel, Inc.*, 890 P.2d 69, 73-74 (Ariz. Ct. App. 1994).

However, subrogation waivers are different from traditional exculpatory clauses. Subrogation waivers do not present the same dangers as exculpatory clauses, because no risk exists that the injured party will be left without compensation, and subrogation waivers serve important policy goals. *Lexington*

*Ins. Co. v. Commc'n Servs., Inc.*, 749 N.W.2d 124, 130-31 (Neb. 2008); *see also*

*Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp.*, 277 F. Supp. 2d 304,

307-08 (S.D.N.Y. 2003) (noting that a "waiver of subrogation clause is an

allocation of risk provision, which places the ultimate risk of loss on the insurer,"

and that subrogation waivers "are not true exculpatory clauses").

The cases Travelers cites all relate to exculpatory clauses. Although Arizona

does not appear to have ruled explicitly on whether a subrogation waiver applies to

a tort claim, Travelers cites no case law that would compel us to conclude Arizona

would depart from the general rule. Travelers points to language in the Arizona

constitution and to language in the Design/Build Agreement itself. But

subrogation waivers are also different from the assumption of risk waivers

contained in many form contracts and targeted by the Arizona Constitution, again

because the injured party is not left without recompense. And while Section 15.8.1

of the agreement clarifies that nothing in the agreement serves as "a limitation of

any duties, obligations, right and remedies otherwise imposed or available at law,"

Travelers cites no authority that supports construing such a provision to constrain a

subrogation waiver—a common type of waiver found in many contracts in the

construction context. Moreover, although neither is completely factually

analogous, both *United States Fidelity and Guaranty Co. v. Farrar's Plumbing and*

11

*Heating Co.*, 762 P.2d 641, 641-43 (Ariz. Ct. App. 1988), and *Fire Insurance*

*Exchange v. Thunderbird Masonry, Inc.*, 868 P.2d 948, 952-53 (Ariz. Ct. App.

1993), lend support to the general proposition that a valid subrogation waiver

encompasses tort claims. Thus, because we conclude that the Authority waived its

rights against Hunt and subcontractors and that the subrogation waiver applies

against Travelers as to its contract claims, we also conclude the waiver applies to

Travelers' tort claim.[2]

### III

Because we affirm the district court's decision to grant Crown Corr's motion

to dismiss, we also affirm the court's decision to grant attorneys' fees to Crown

Corr.

**AFFIRMED.**

---

[2] Travelers also contends that, even if the subrogation waiver applies to its tort claim, "the scope of that waiver could extend only to damage to property that was the subject of the subcontractor's work" and not to other property—such as the separate roof system and sound system speaker clusters—that was allegedly damaged by the falling roof panels in this case. We conclude that the district court did not err in deciding that the subject of the Design/Build Agreement, and the subrogation waiver specifically, was the entire completed stadium and that Travelers has not sufficiently supported its argument that certain portions of the stadium are so separate and distinct as to constitute "other property" outside the scope of the agreement and waiver.