NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WOOD EXPRESSIONS FINE CUSTOM CABINETRY INC,
*Plaintiff/Appellant*,

*v.*

AAA ALARM & SECURITY INC, *Defendant/Appellee*.

ASI COMMUNICATIONS INC, *Third-Party Defendant/Appellee*.

No. 1 CA-CV 19-0382
FILED 11-18-2021

Appeal from the Superior Court in Maricopa County
No. CV2013-004106
The Honorable Connie Contes, Judge *Retired*

**REVERSED AND REMANDED**

COUNSEL

Poli, Moon & Zane PLLC, Phoenix
By Michael N. Poli, Lawrence R. Moon, Jeffrey G. Zane
*Counsel for Plaintiff/Appellant*

Quintairos, Prieto, Wood & Boyer, PA, Scottsdale
By Erick S. Durlach, Rita J. Bustos, Cody N. Crosier
*Counsel for Defendant/Appellee AAA Alarm & Security Inc*

---

### MEMORANDUM DECISION

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

---

**C A T T A N I**, Judge:

¶1 Wood Expressions Fine Custom Cabinetry, Inc. ("Wood Expressions") appeals the summary judgment entered in favor of AAA Alarm & Security, Inc. ("AAA") on Wood Expressions' claims for damages caused by a fire. For reasons that follow, we reverse and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Wood Expressions built custom wood products in a commercial facility until its entire facility was destroyed by fire in January 2012.

¶3 Several years earlier, Wood Expressions entered a contract with AAA for continuous monitoring of the facility's burglar and fire alarm system. AAA subcontracted the monitoring service to a different company.

¶4 The alarm system was connected to a remote monitor over telephone lines, and the system checked connectivity by sending a test signal to the monitor around 11 p.m. every night. Around midnight, the monitoring company's software would confirm that a communication from the alarm system had been received that day. The software was programmed to accept any signal from the system within the preceding 24 hours—not just the nightly test signal—as proof of connectivity for the day. The nightly test signal was successfully received every night through January 20, 2012.

¶5 On Saturday, January 21, 2012, the alarm system transmitted and the monitoring company received a "close" signal when the alarm was set at 6:44 p.m. Just over two hours later, however, an intruder cut the telephone lines, so the nightly test signal failed. The monitoring company's software did not register a communications issue (and no one contacted Wood Expressions) because the close signal, received earlier that day, satisfied the one-transmission daily requirement.

**¶6**            On Sunday, January 22, 2012, the nightly test signal failed again. Around midnight, the monitoring company's software logged a "no test" about which to notify AAA, but by that time, law enforcement had discovered that Wood Expressions' facility was on fire. Wood Expressions later alleged that the fire had been set by an intruder who gained access to the building through a window broken the night before, when the telephone lines were cut. The fire department informed the monitoring company of the fire and the monitoring company then contacted Wood Expressions, but the entire facility had already been destroyed.

**¶7**            Wood Expressions and two related entities were named insureds under a commercial insurance policy that included coverage for loss of the building, business personal property, and business income. All three insureds submitted claims under the policy for losses caused by the fire. Although the insurance company paid Wood Expressions and the two related entities collectively more than $2 million, the three insureds sued the insurance company for breach of contract and bad faith, alleging that the insurer had wrongfully failed to pay all amounts owed under the policy. The insurance company ultimately settled with the three insureds for a collective total of $6 million.

**¶8**            Wood Expressions then sued AAA for negligence and breach of contract, alleging that if AAA had properly informed Wood Expressions of the security issue the first night, Wood Expressions could have fixed the problem and prevented the damage that occurred the second night. AAA denied liability, then filed a third-party claim against the monitoring company seeking indemnity. On the third-party claim, the superior court granted partial summary judgment in favor of the monitoring company based on a term in the subcontract capping the monitoring company's liability to AAA at $250.

**¶9**            AAA moved for partial summary judgment against Wood Expressions on the negligence claim, and Wood Expressions cross-moved for partial summary judgment on liability. The superior court denied both motions, and in ruling on AAA's motion specifically noted that AAA had intended to include—but had mistakenly omitted—a term that would have contractually capped its liability to Wood Expressions at $150.

**¶10**            Several months later, AAA filed a second motion for summary judgment on different grounds. As relevant here, AAA argued that a waiver provision (the "Waiver") in its contract with Wood Expressions "shift[ed] the risk of the subject hazards, burglary and fire, to [Wood Expressions'] insurance," meaning Wood Expressions could (and

did) recover from its insurer but could not recover from AAA. AAA also argued that, as a matter of law, its conduct did not amount to gross negligence. Wood Expressions responded that the Waiver only applied to an insurance company's right to subrogation, not Wood Expressions' own claims against AAA; that its insurer had not provided full compensation for its losses; that the collateral source rule permitted it to recover from AAA even for losses that insurance had paid; and that questions of fact precluded summary judgment on gross negligence, which would prevent AAA from enforcing an exculpatory clause like the Waiver.

¶11 This time the superior court granted summary judgment for AAA. The court distinguished the incomplete limitation-of-liability clause at issue in AAA's first motion from the Waiver, which the court characterized as a risk-allocation provision by which Wood Expressions and AAA agreed that the risk of loss in cases covered by Wood Expressions' insurance would be borne by Wood Expressions' insurance. Because Wood Expressions' insurance did provide compensation for damage from the fire, the Waiver applied and prevented Wood Expressions' claims against AAA.

¶12 Wood Expressions requested clarification of two aspects of the ruling. First, Wood Expressions asked the court to address the scope of the Waiver—whether it applied only to the extent of the insurer's payments or also precluded recovery of Wood Expressions' losses that exceeded the insurance proceeds. Second, Wood Expressions asked the court to rule explicitly on gross negligence and whether the Waiver would apply notwithstanding a triable issue on AAA's gross negligence. AAA moved to strike both arguments, asserting that Wood Expressions had never argued that the Waiver did not apply to its deductible or uninsured losses, that Wood Expressions had not properly raised an argument on gross negligence (which appeared one page outside the page limit in Wood Expressions' response on summary judgment), and that (even considering Wood Expressions' argument) summary judgment on gross negligence was proper.

¶13 The superior court addressed gross negligence and denied that facet of Wood Expressions' motion, reasoning that Wood Expressions' evidence showed ordinary negligence at most and thus that AAA was entitled to summary judgment on that issue. After a second oral argument regarding the scope of the Waiver, the court denied Wood Expressions' motion for clarification without further comment.

¶14 After dismissing AAA's third-party claim against the monitoring company as moot given the summary judgment ruling against

Wood Expressions, the court entered judgment for AAA on Wood Expressions' claims and awarded AAA several hundred thousand dollars in attorney's fees and costs. Wood Expressions timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶15** Wood Expressions challenges the superior court's summary judgment ruling, contesting the court's assessment of (1) the Waiver's scope, (2) the applicability of the collateral source rule, and (3) the existence and effect of gross negligence. Resolution of all three issues turns on the parameters and character of the Waiver itself.

## I. Standards.

**¶16** Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review a summary judgment de novo, construing all facts in favor of the party against which judgment was entered. *Allen v. Town of Prescott Valley*, 244 Ariz. 288, 290, ¶ 4 (App. 2018).

**¶17** We similarly review de novo issues of contract interpretation. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010). The cornerstone of contract interpretation is determining and enforcing the parties' intent, considering the contract as a whole and avoiding, if possible, a construction that renders part of the contract superfluous. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153, 158 n.9 (1993); *ELM Ret. Ctr.*, 226 Ariz. at 291, ¶ 18. The language of the contract is the best guide to its meaning. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009); *ELM Ret. Ctr.*, 226 Ariz. at 290, ¶ 15.

## II. The Contractual Waiver.

**¶18** The alarm contract between AAA and Wood Expressions included several clauses germane to the issues on appeal. Most generally, the contract provided for "continuous monitoring" of the alarm system at a rate of approximately $35 per month. The contract also included a provision ostensibly disclaiming any warranty and directly limiting AAA's liability. Notably, this provision, the subject of AAA's first motion for partial summary judgment, omitted a term that AAA intended to include that would have imposed a $150 cap on damages. Despite omitting the critical liability limitation, this provision did, however, include two

statements (emphasized in all caps) that the parties understood AAA was not an insurer of Wood Expressions' property.

¶19 Finally, the parties' contract included the Waiver provision at issue here. Titled "Waiver of Subrogation," the clause released AAA from liability for "all hazards covered by Customer's insurance":

> [Wood Expressions] does hereby for himself and any parties claiming under him, release and discharge [AAA] from and against all hazards covered by [Wood Expressions'] insurance, it being expressly understood and agreed that no insurance company or insurer will have any right of subrogation against [AAA] for any loss or damage resulting from fire, burglary, or any other cause covered under any such policy.

Subrogation, of course, generally permits an insurer that paid its insured for a loss under the policy to step into the insured's shoes to pursue a claim against the third party primarily liable for the loss. *Monterey Homes Ariz., Inc. v. Federated Mut. Ins. Co.*, 221 Ariz. 351, 355, ¶ 13 (App. 2009); *see also Albany Ins. Co. v. United Alarm Servs., Inc.*, 194 F. Supp. 2d 87, 93 (D. Conn. 2002). Because the insurer's subrogation rights derive from the insured's right to recover against the third party, however, the insured's release of its own claims against the third party likewise waives the insurer's right to recover from the third party by way of subrogation. *Monterey Homes*, 221 Ariz. at 355, ¶ 13.

¶20 Of note here, the Waiver expressly waived an insurer's subrogation claim against AAA, but it did so by having Wood Expressions release its own potential claims against AAA. Additionally, although the contract noted AAA was not an insurer, nothing in the Waiver or the rest of the contract required Wood Expressions to secure insurance coverage in any specified amount—or at all, for that matter—although the contract could have done so. *Compare, e.g., Gap, Inc. v. Red Apple Cos.*, 725 N.Y.S.2d 312, 314, 316 (App. Div. 2001) (subrogation waiver but no underlying contractual requirement to acquire insurance), *with, e.g., United Alarm Servs.*, 194 F. Supp. 2d at 93, *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 668 (N.Y. 2012), *Bd. of Educ. v. Valden Assocs., Inc.*, 389 N.E.2d 798, 798 (N.Y. 1979), *Travelers Prop. Cas. Co. of Am. v. Glob. Prot. Sys., Inc.*, 898 N.Y.S.2d 215, 217 (App. Div. 2010) (contract requiring the purchase of insurance), and *Nationwide Mut. Fire Ins. Co. v. Sonitrol, Inc.*, 672 N.E.2d 687, 688–89, 692 (Ohio Ct. App. 1996) (no express insurance requirement, but multiple warnings and recommendations that the property owner purchase

insurance, which the owner did).  Despite that omission, Wood Expressions did in fact have insurance coverage, and the Waiver thus released AAA to the extent (but only to the extent) of such coverage.

### A.       Scope of the Waiver: Hazards Covered by Insurance.

**¶21**       The Waiver expressly released AAA from "hazards covered by [Wood Expressions'] insurance," but the parties dispute what that clause means.  The superior court's ruling adopted AAA's categorical approach: that the Waiver applies based solely on the type of hazard (e.g., fire or burglary) and reaches all damage caused by any hazard for which Wood Expressions' insurance provided some coverage.  In contrast, Wood Expressions proposes a payment-based approach: that the Waiver only applies to the extent Wood Expressions' insurance in fact paid for damage caused by a given hazard and not to any uninsured (or simply unpaid) losses.  As described below, we conclude, however, that the Waiver applies to damage caused by all types of hazards for which Wood Expressions' insurance provided coverage, but only to the extent Wood Expressions' insurer is contractually obligated to pay — a policy-limits approach.

**¶22**       AAA's categorical view — that the Waiver is triggered based solely on the type of hazard that caused damage — is not wholly implausible, but it is ultimately not persuasive.  To be sure, the Waiver is phrased as a release from the hazard itself — "release . . . from and against all hazards covered by [Wood Expressions'] insurance" — but focusing solely on the type of hazard at play does not give enough weight to what it means for the "hazard" to be "covered" by insurance.  And coverage is linked not just to the type of hazard involved but also to the scope of the insurer's obligation to pay.  *Cf., e.g., Gap*, 725 N.Y.S.2d at 315–16 (limiting the scope of a similar subrogation waiver for "risk insured against" to the monetary scope of insurance coverage, meaning the substantial deductible paid by the subrogor (and not by insurance) fell outside the scope of the waiver); *Lloyd's Underwriters v. Craig & Rush, Inc.*, 32 Cal. Rptr. 2d 144, 146 (Ct. App. 1994) (equating "covered" to when insurance "paid for the loss").  AAA could have drafted a broader clause expressly specifying that Wood Expressions "look *solely* to its insurer for recovery of its loss," *Abacus*, 967 N.E.2d at 668 (emphasis added), or clarifying that the clause was a release from "all hazards covered by insurance . . . , *including all deductible and retained limits as well as loss or damage in excess of policy limits*," *United Alarm Servs.*, 194 F. Supp. 2d at 93 (emphasis added), but the Waiver did not go beyond what was "covered."  *Cf. United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 258 (App. 1983) (noting that to the extent the contract language is ambiguous, we construe the language against the drafter).

¶23        The authorities on which AAA relies are not to the contrary. In *United Alarm Services*, for example, the subrogation waiver clause *began* by releasing the alarm company from "hazards covered" (as here) but then expressly *added* the insurance deductible and damages in excess of policy limits to the scope of the waiver. 194 F. Supp. 2d at 93. And *Global Protection Systems* involved a claim *by the insurance company* as subrogee and thus necessarily addressed only the amounts actually paid by insurance. 898 N.Y.S.2d at 217 (holding that the waiver barred the insurance company's claim for "the return of any proceeds paid to the [insured] under the subject policy"). Finally, *Central Alarm of Tucson v. Ganem* did not involve a subrogation waiver at all. 116 Ariz. 74, 78 (App. 1977). The clause at issue there imposed a cap on liability. *Id.* at 77. Here, AAA apparently intended to include a similar fixed-dollar-amount liability-limiting term (separate from the Waiver) but neglected to include the amount of the intended damages cap. None of these authorities support AAA's categorical approach given the language of the Waiver here.

¶24        Wood Expressions' proposed payment-based approach—that the Waiver releases AAA only for the amounts actually paid out by insurance—is closer to the mark but is similarly imprecise. This approach more closely tracks the extent to which "hazards" are "covered" by insurance, and it would be sufficient if the Waiver only waived the insurance company's subrogation rights—the insurer as subrogee only has a claim for the amounts it in fact paid. *See, e.g.*, *May Dep't Store v. Ctr. Devs., Inc.*, 471 S.E.2d 194, 197 (Ga. 1996) ("Subrogation requires the existence of a contract to pay (insurance) and the actual payment of the claim; in the absence of insurance and payment thereunder, there can be no subrogation and hence no waiver."). But the Waiver here released Wood Expressions' *own* claims against AAA as well—"[Wood Expressions] does hereby for himself and any parties claiming under him, release and discharge [AAA]"—meaning Wood Expressions released its claims against AAA for "all hazards covered by [its] insurance" regardless whether the insurer in fact paid.

¶25        Rather than depending on actual payment, a "hazard" is thus "covered" by insurance to the extent the insurer is contractually obligated to pay—up to policy limits and excluding any deductible. *See, e.g.*, *Gap*, 725 N.Y.S.2d at 315–16; *Hancock Fabrics, Inc. v. Alterman Real Estate I, Inc.*, 692 S.E.2d 20, 22–23 (Ga. 2010); *Lexington Ins. Co. v. Entrex Commc'n Servs., Inc.*, 749 N.W.2d 124, 126–27 (Neb. 2008) (noting that, despite a subrogation waiver, the subrogor/owner's claim for uninsured losses—the deductible not paid by insurance—remained pending). In the ordinary case, when there is no dispute that the insurer paid as required under the policy, this

policy-limits approach and Wood Expressions' proposed payment-based approach should yield equivalent results. But here, for example, Wood Expressions sued its insurer for breach of contract and bad faith based on the insurer's alleged failure to pay all amounts due under the policy. Wood Expressions' claim as to any losses within policy limits was solely against its insurer; Wood Expressions could recover from AAA only to the extent of the deductible or damages in excess of policy limits. *See Gap*, 725 N.Y.S.2d at 315–16.

¶26 With this understanding of the scope of the Waiver, AAA did not show entitlement to judgment as a matter of law. The summary judgment record is unclear regarding Wood Expressions' insurance policy limits and the damages it suffered—especially given that there were three named insureds making claims and receiving payments under the policy, that Wood Expressions itself alleged the insurer had not paid up to policy limits, and that the settlement between Wood Expressions (and the other insureds) and the insurer did not clearly delineate between coverage and bad faith damages. Although Wood Expressions did not specify what damages it now seeks from AAA were attributable to its insurance deductible or fell beyond policy limits (rather than just in excess of payments received), Wood Expressions did assert that it was not fully reimbursed for its losses, which would encompass damages outside the scope of the Waiver. And the parties have not yet had an opportunity to weigh in on the state of the evidence given the policy-limits understanding of the scope of the Waiver. Accordingly, we reverse the summary judgment in favor of AAA and remand for further proceedings consistent with this decision.

### B. Character of the Waiver: Allocation of Risk.

¶27 As the superior court correctly described, the Waiver operates as a risk-allocation provision under which Wood Expressions and AAA agreed in advance that Wood Expressions' insurance would bear primary responsibility for the risk of loss in cases to which it applied. In essence, the Waiver contemplated that "one of the parties [Wood Expressions] to the contract [would] provide insurance for all of the parties." *See Great Am. Ins. Co. of N.Y. v. Simplexgrinnell LP*, 874 N.Y.S.2d 465, 466 (App. Div. 2009) (citation omitted); *see also St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 86 (2d Cir. 2005). As the business owner, Wood Expressions was best positioned to anticipate potential risks and secure appropriate insurance coverage. *See Entrex Commc'n Servs.*, 749 N.W.2d at 130. And given AAA's comparatively nominal fee for monitoring the alarm system—less than $500 annually as opposed to a nearly $15,000 annual

insurance premium—it makes sense that the parties contemplated looking to Wood Expressions' insurance policy rather than requiring AAA to secure additional coverage (or treating the alarm contract as, in essence, an umbrella insurance policy).

### 1. Collateral Source.

¶28 Wood Expressions argued in superior court that the collateral source rule permitted it to recover from AAA even losses for which it had received compensation from insurance. The collateral source rule generally permits an injured plaintiff to recover in full from a liable defendant despite having received compensation for the same injury from a third party, such as an insurance provider. *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 17, ¶ 14 (App. 2014); *Norwest Bank (Minn.), N.A. v. Symington*, 197 Ariz. 181, 189, ¶ 36 (App. 2000); *see also* Restatement (Second) of Torts § 920A (1979). The doctrine traditionally applies only to tort cases, not contract claims, *Norwest Bank*, 197 Ariz. at 189, ¶ 36, although this court has recognized that the rule may be extended to contract claims under certain circumstances. *John Munic*, 235 Ariz. at 18–19, ¶¶ 18–23.

¶29 On appeal, Wood Expressions asserts that the superior court erred by implicitly ruling that the Waiver waived Wood Expressions' reliance on this doctrine. But the Waiver is wholly inconsistent with application of the collateral source rule as Wood Expressions urges. The Waiver reflected an agreement in advance that Wood Expressions' insurance (when and to the extent it applied) would be Wood Expressions' first and primary source of compensation for any damages it suffered. Although Wood Expressions posits that it is unfair to allow AAA to, in effect, reap the benefit of Wood Expressions' payment of insurance premiums for years, that is precisely what the Waiver contemplates. *See id.* at 18, ¶¶ 18–19 (reasoning that the parties' contractual expectation interests should drive the application of the collateral source rule to contract claim). Similarly, given that the Waiver waives Wood Expressions' insurer's subrogation rights, applying the collateral source rule would simply and necessarily provide Wood Expressions a double recovery—despite the contract's allocation of risk and responsibility for losses covered by insurance. *Compare id.* at 19, ¶ 22.

¶30 Wood Expressions notes that the contract did not require it to purchase insurance, much less require any minimum amount of coverage. But having secured insurance, Wood Expressions is bound by the Waiver to release its claims against AAA up to policy limits.

### 2. **Gross Negligence.**

¶31 Wood Expressions argues that AAA could not enforce the Waiver if found to be grossly negligent, and that issues of fact precluded summary judgment on the issue of gross negligence. Even assuming a triable issue on gross negligence, however, Wood Expressions' argument is unavailing because the Waiver is a risk-allocation provision, not an unenforceable exculpatory clause.

¶32 Relying on *Airfreight Express Ltd. v. Evergreen Air Center, Inc.*, 215 Ariz. 103, 110–11, ¶¶ 20–22 (App. 2007), Wood Expressions asserts that AAA cannot rely on the Waiver to release it from liability from gross negligence or reckless breach of contract. But *Airfreight* involved a true exculpatory clause fully releasing one contracting party from liability for specific categories of damages and leaving the other without recourse. *Id.* at 110, ¶ 18. Here, although the Waiver limited AAA's liability to a degree (at least to the extent of whatever applicable insurance coverage Wood Expressions happened to procure), it did not leave Wood Expressions without recourse; it does not limit Wood Expressions' recovery but rather directs from whom that recovery should come.

¶33 Wood Expressions' insurance paid a substantial amount for damages resulting from the fire, and to the extent Wood Expressions' damages exceeded coverage, AAA remains liable despite the Waiver. Enforcing the Waiver simply recognizes exactly what the parties bargained for: low-cost alarm service with an agreed-to allocation of risk requiring that Wood Expressions look first to its own insurance before pursing damages from AAA. *See, e.g.*, *Entrex Commc'n. Servs.*, 749 N.W.2d at 130–31 (noting that, unlike liability-limiting exculpatory clauses, subrogation waivers "encourag[e] parties to anticipate risks and to procure insurance covering those risks, thereby avoiding future litigation, and facilitating and preserving economic relations and activity," all while still preserving the injured party's ability to recover through insurance); *Glob. Prot. Sys.*, 898 N.Y.S.2d at 217 (characterizing subrogation waivers as prearranged risk-allocation devices that do not "exempt a party from liability" but rather "require one of the parties to the contract to provide insurance" (citation omitted)); *see also, e.g.*, *Travelers Indem. Co. v. Crown Corr Inc.*, 589 Fed. Appx. 828, 833 (9th Cir. 2014) (noting that subrogation waivers serve important policy goals in permitting allocation of risk and, unlike true exculpatory clauses, do not run the risk of leaving an injured party "with no recourse"). Accordingly, even if Wood Expressions could prove gross negligence, the Waiver remains enforceable.

### III.    Attorney's Fees and Costs.

**¶34**       Because we reverse the summary judgment for AAA, we likewise vacate the award of attorney's fees and costs in its favor, without prejudice to a future request if appropriate.

**¶35**       AAA seeks an award of attorney's fees on appeal under A.R.S. § 12-341.01. Because AAA was not wholly successful, and in an exercise of our discretion, we deny its request.

**¶36**       Given our resolution of the matter, Wood Expressions is entitled to an award of costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342(A).

### CONCLUSION

**¶37**       We reverse the judgment in favor of AAA, vacate the award of attorney's fees in favor of AAA without prejudice, and remand for further proceedings to determine whether Wood Expressions' damages exceeded the policy limits of its fire and burglary policy or included a loss based on its deductible amount under the policy.



AMY M. WOOD • Clerk of the Court
FILED:    AA